## SAMUEL REYNOLDS

### *v.*

## THOMAS FERREE *et al.*

1. AGENCY—*when acts and statements of agent are binding.* The statements and agreements of a party's son in respect to notes of the father, without proof of agency, are not admissible in evidence, and will have no binding effect on the father, unless, with a full knowledge of all the facts and circumstances, he has ratified, expressly or impliedly, the acts of his son.

2. It is error to permit the statements of a party's son to go in evidence, against objection of the father, without proof that he was the general or special agent of his father, and authorized, by the terms of his agency, to make the arrangement claimed to have been made by him.

3. Parties, in dealing with an assumed agent, should be careful to see and be assured that he is the agent he represents himself to be, and that he is acting within the scope of his powers.

4. If a father authorizes his son to act as his agent in respect to his notes on another, then, to the extent of the authority conferred, the acts and statements of the son while performing the business of his agency will be binding. But authority in a son to keep a party's books and accounts, and to figure the interest due on notes, does not show authority in the son to collect and settle such notes and accounts.

5. SAME—*by adopting unauthorized acts.* The doctrine of ratification of an unauthorized act in behalf of another is, that the principal shall be fully and fairly informed of all the facts and circumstances of the transaction. The acceptance of corn in payment on notes, not in value equal to the sum due on the notes, under an arrangement made by the party's son without authority, will not bind the father to the son's agreement to take the corn in full satisfaction, unless the father is informed of such agreement before he accepts.

APPEAL from the Circuit Court of Warren County; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was an action of *assumpsit*, brought by Samuel Reynolds against C. Lambert, Thomas Ferree, and Joseph H. Kirby, upon a promissory note dated March 27, 1867, for $250, payable on or before January 1, 1868, with ten per cent interest.

The cause was tried twice, first at the September term, 1872, resulting in a verdict and judgment for the defendants, which was reversed in 69 Ill. 495; and, secondly, at the January term, 1876, resulting in the same way as on the first trial.

Mr. JOHN J. GLENN and Messrs. MILLER & FROST, for the appellant.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was *assumpsit,* on a promissory note, brought to a special term of the Warren circuit court, held first Monday of December, 1871, by Samuel Reynolds, plaintiff, and against C. Lambert, Thomas Ferree, and Joseph H. Kirby, defendants. The pleas were, *non assumpsit,* payment, and set-off, and the issues made up thereon were tried by a jury, who, under instructions, rendered a verdict for the defendants. A motion for a new trial was denied, and judgment rendered against the plaintiff for the costs, to reverse which he appeals, and assigns for error, improper evidence admitted against plaintiff's objection, misdirection of the court to the jury, and that the verdict is against the law and the evidence.

. We have given the record a careful study, and are satisfied the errors are well assigned.

The facts stated briefly are, substantially, that the plaintiff held two notes, on one of which Lambert and Ferree were alone responsible as makers. One dated October 4, 1866, payable twelve months after date to S. Reynolds or bearer for $350, at ten per cent interest. The other, the note in suit, bears date March 27, 1867, payable on or before the first day of January next after the date, to S. Reynolds or bearer, for $250, with interest at ten per cent from the date. This note was executed by C. Lambert, Thomas Ferree, and Joseph H. Kirby, and there was due on it, when suit was brought, December 1, 1871, of interest, about $166, making the gross sum of $416, or thereabouts.

Now, it is claimed by the defendants Lambert and Ferree that a certain arrangement made with the payee, S. Reynolds, by which a crop of corn of about fifty-two acres then standing in the field, which they had rented of Reynolds at a rent of fifteen bushels of corn to the acre, was

received by Reynolds in full satisfaction and payment of both these notes.

We do not think the evidence justifies such a conclusion. It is undisputed that Lambert and Ferree had rented about 160 acres of land of Reynolds for several years, for the years 1868–9 and 1869–70, and were in arrears for the rent due in 1869 and 1870. Reynolds, in 1870, sued out a landlord's warrant and levied it on the crop of 1870, at which juncture Lambert and Reynolds had a meeting, at which a settlement was proposed by Reynolds. They saw Thomas Duncan on the subject—a relative of Lambert and Ferree—and he states that in August, 1870, Samuel Reynolds, and James Reynolds, and Lambert told him they had agreed that Reynolds should select a man, Lambert select one, and the two so selected should select a third, and the three were to appraise the corn Lambert and Ferree had raised on the farm rented of Reynolds, and Reynolds was to take it on notes he held against Lambert and Ferree at the appraisement. This arrangement to arbitrate was not carried out, the parties chosen as appraisers not making their appearance as agreed upon.

Ferree, in his deposition, states that he executed a note to Reynolds for $350, which he partly paid; that in August, 1870, had a settlement of accounts with Reynolds, and there was coming to witness $142 on the settlement, which was applied and indorsed on the note. Subsequently he shows there was labor performed by him and Lambert to the amount of $100, which Reynolds agreed to indorse on that note; he further deposes in answer to an interrogatory to which objection was made by plaintiff, that he knows that Reynolds got the corn; had heard both Samuel and James Reynolds acknowledge it; it was grown on S. Reynolds' farm, about sixty acres, good corn, and would average about fifty-five bushels to the acre. He further deposed that in 1870, on the final settlement, all the rent due Reynolds was paid up in full.

Lambert, in his deposition, states the note in question was

paid in full before the commencement of the suit.   He then states an interview with James Reynolds, in which James wanted him to leave the farm, and offered to give up all notes held by his father, he stating he was transacting business for his father, if they would turn out some corn then growing on the place, and give the work done in the timber and leave the place.   He deposes that, after this interview, James Reynolds and his father came to him, and they went to where Thomas Duncan was surveying some land, and both of the Reynolds stated that they would give up all notes held against defendants (Lambert and Ferree) if they would leave the place and turn in the corn mentioned, and the work they had done.   He says "we then agreed to the proposition, and the corn was turned out."   He further deposes "they then expressed themselves that both notes would be, and were, amply paid, and paid in full."   He then deposes to a subsequent interview had by James Reynolds with Mrs. Ferree, the wife of Thomas Ferree, in which she asked James to give up the notes and he replied he could not, as he had not them with him, but assured them that the notes were fully paid, including the note sued on, and he would see that the notes would never come up against them, and that he would destroy them. He further deposes the notes paid were the $350 note and the note in suit ; they were paid in the manner before described — that is, by turning out the corn in the field, and relinquishing the claim for work in the timber.   One John M. Strain, a witness for defendants, deposed he had never seen the note, but had heard James Reynolds say that the note referred to was fully paid before the commencement of the suit by corn turned over, together " with another note being paid by said corn."   James Reynolds told him he had taken the corn on the notes, and in full satisfaction thereof, and he told me he had agreed to take the corn in full payment of the notes, one of them being for $350, and the other, the note in suit.   James Ferree, a son of one of the defendants, states in his deposi-

574 REYNOLDS *v.* FERREE *et al.* [Sept. T.

Opinion of the Court.

tion that he knows the note in question was paid before suit was brought; it was paid in corn; that Samuel Reynolds held another note against Thomas Ferree, given for a span of mules — thinks for $300. This note was paid in full in 1870, before the commencement of this suit, paid in work and labor, and by a horse or mare, and some money; the other note was paid in full in corn, standing in the field — about fifty-two acres. He then deposes to the interview between James Reynolds and Mrs. Ferree.

Samuel Reynolds and James Reynolds give in their testimony, in open court, a different account of the transaction and dealings, and we are induced thereby to examine somewhat critically the statements of the witnesses making their depositions in a distant State, without cross-examination.

Thomas Ferree, the principal in the old note, dated October 4, 1866, for $350, avers that a part of it only was paid; that in August, 1870, they had a settlement of accounts, and there was coming to him $142, which was applied and indorsed on the note. Subsequently there was labor performed and completed by him and Lambert, to the amount of $100, which Reynolds agreed to indorse on that note. These two sums would make only $240, saying nothing about the interest, which, on September 10, 1870, amounted (two years and eleven months, at ten per cent), not to be very particular, to $167, making, in all, $517. There was another credit indorsed, about the same time, for $64 for corn and hay hauled to Abington for Reynolds. This added makes the credit $304; taking this from the amount due on old note, $517, leaves due on that note $214, beyond controversy. The testimony of James Ferree, against these facts, is wholly worthless. His father, who made the note and the payments on it, does not undertake to state such facts as his son has stated.

These facts further show that the testimony of none of the witnesses who depose to the payment of both these notes by that crop of corn was at all reliable. The figures and

facts overthrow them.   The truth is to be found, we think, in the testimony of Mr. Duncan, the brother-in-law of Thomas Ferree, and the uncle of Lambert's wife.   He says, when the parties came to him and stated the agreement, it was that the corn should go on the notes.   As he expressed it, " Reynolds was to take it (the corn raised by defendants on plaintiff's farm) on notes he held against Lambert and Ferree at the appraisement."   The facts show there was then a considerable balance due on the $350 note of October 4, 1866, and the sole inquiry is, has the value of this corn been honestly applied on that note, and was there a surplus which should be credited on the note now in controversy? We lay wholly out of view the statements made by James Reynolds, as it is not shown he was the agent of his father to make any statements or agreements in respect to these notes.   What he may have said and done, not being the agent of the plaintiff, has no binding effect against the plaintiff, unless, with a full knowledge of all the facts and circumstances, plaintiff acquiesced in or ratified, expressly or impliedly, his acts.   Of this we will remark further when we come to consider the instructions.   Now, what was the value of this field of corn?   There were fifty acres that would average forty-five bushels to the acre, fifteen of which belonged to the plaintiff as rent.   There would remain 1,500 bushels, which, at 25 cents per bushel, would equal $375.   We have seen, the balance of the old note, after allowing all credits, was $214.   This value of corn, $375, pays that balance, with an excess of $161 in favor of defendants.   The note in suit is $250, and interest thereon amounting to $166.33, making, principal and interest, $416.   Deducting from this the excess as above, $161, leaves for the plaintiff in the action $255.

We are entirely satisfied, on a full and careful examination of this record, that the verdict should have been set aside.

It was also error to permit the statements of James

Reynolds to go in evidence against objections, in the absence of proof that he was the general or special agent of plaintiff, and authorized by the terms of his agency to make the arrangement about these notes which the defendants claim he did make. Parties in dealing with an assumed agent should be careful to see and be assured that he is the agent he represents himself to be, and that he is acting within the scope of his powers. The fourth instruction on this point was calculated to mislead the jury. It should have read, if plaintiff had authorized his son to act as his agent in relation to these notes, then, to the extent of the authority conferred, the acts and statements of the son while performing the business of his agency would bind the plaintiff. It by no means follows, because a father employs his son to keep his books and accounts, and figure the interest due upon notes, that the son has authority to collect and settle such notes and accounts.

It is urged by appellees that the acceptance by appellant of the corn is a ratification of the act, and an acquiescence in all things said and done by his son in regard to the notes. The doctrine of ratification of an unauthorized act is, that the principal shall be fully and fairly informed of all the facts and circumstances of the transaction. *Cadwell* v. *Meek*, 17 Ill. 224; *Matthews* v. *Hamilton*, 23 ib. 470, and numerous other cases. In receiving this corn, had not appellant a right to know and believe it was given to him on the notes, as Duncan stated the contract really was, and not in full discharge of both notes, when there was a balance justly due appellant of more than $250? His son denies making any such promise and agreement, and it is very certain he never communicated such to his father. Persons dealing with an agent are bound, at their peril, to see the authority of the agent before he concludes the bargain. *Peabody* v. *Hoard*, 46 Ill. 242. As this pretended interview with Mrs. Ferree when she demanded the notes, the fact that James Reynolds did not have them in his pos-

session was sufficient to put these parties on their guard, and to warn them of his want of authority.

We think injustice has been done appellant by this verdict and judgment, and the judgment must be reversed and the cause remanded that a new trial may be had.

*Judgment reversed.*