## Lovisa E. Freeman v. Henry H. Gordon.

1. RATIFICATION—*Must be with a Full Knowledge of the Facts.*—The recognition and promise to pay a note signed by an unauthorized person will not render the party liable on the same, unless such recognition and promise is made with a full knowledge of the facts affecting his rights.

2. PARTNERS—*Tenants Are Not.*—The court sets out the lease and its provisions, and holds by its terms there was no general partnership authorizing the lessee to purchase stock or other property on joint account or on account of the lessor.

3. HUSBAND AND WIFE—*Husband's Agency—When Not Presumed.*— A husband can not bind his wife for his acts in buying stock or in authorizing her tenant to buy on joint account with her, and sign notes with her name and his, simply from the fact that he was the general agent of his wife to look after the farming operations of her land.

4. INSTRUCTIONS—*Duty of the Court in Giving.*—It is improper for the court to give the jury an option as to which of certain instructions they may take as the law. The court is the judge of the law in all civil cases, and its instructions should be consistent and harmonious.

Assumpsit, on a promissory note. Appeal from the County Court of Carroll County; the Hon. B. L. PATCH, Judge, presiding. Heard in this court at the December term, 1894. Reversed and remanded. Opinion filed May 28, 1895.

J. M. HUNTER, attorney for appellant, contended that an agreement by a party to furnish money or property to another to conduct or carry on business for which the other party is to pay interest, even where profits after deducting expenses are to be equally divided, does not constitute them partners. Smith v. Knight, 71 Ill. 148.

A married woman living with her husband can not enter into a partnership except with the consent of her husband. Sec. 6, Chapter 68, R. S.

Where one leases to another a farm, and agrees to furnish a certain amount of teams and labor, the crops and products to be divided between them, this does not constitute a partnership; it is only a joint interest. Blue v. Leather, 15 Ill. 31; Fawcet v. Osborn, 32 Ill. 411.

An unauthorized execution of a note by a party for another would not bind the person charged by a recognition and promise to pay the same. Gleason v. Henry, 71 Ill. 109.

Full or implied ratification of act of agent by principal must be made with full knowledge of all the facts affecting their interest and liability in the transaction. Farwell v. Myers, 35 Ill. 40; Stein v. Kendall, 1 Brad. 103; Reynolds v. Ferree, 86 Ill. 570.

W. H. A. RENNER and GEO. L. HOFFMAN, attorneys for appellee, contended that an agency may be shown by a course of conduct or dealings on the part of the agent that will justify the presumption that he has the authority to act, or by words or acts of the principal, importing ratification. Proctor et al. v. Tows, 115 Ill. 138; Porter et al. v. Robertson, 34 Ill. App. 74; Whiteside v. Margarel, 51 Ill. 507; Avery v. Sword, 28 Ill. App. 202.

Agency may be shown by the subsequent ratification by principal. Pells et al. v. Lull, 31 Ill. App. 158.

Principal is bound by the acts of his agent within the apparent scope of his authority, whether authorized or not.

Ins. Co. v. White, 106 Ill. 67; Ins. Co. v. Chesnut, 50 Ill. 111; McDonald et al. v. Chisholm, 131 Ill. 282.

A principal can not avow the acts of his agent to part of the transaction and repudiate them as to another part. Searing v. Butler, 69 Ill. 575; T. W. & W. R. Co. v. Elliott, 76 Ill. 67; U. M. Life Ins. Co. v. Kirchoff, 133 Ill. 368; Ragland v. McFoll, 137 Ill. 91; Bailey et al. v. Pardridge et al., 134 Ill. 192.

Where husband controls his wife's property he is presumed to be her agent. Patten v. Patten, 75 Ill. 446.

Where an agent assumes without authority to create a partnership between his principal and another person, it may, like any other act of an agent, not unlawful, be ratified by the principal, and such ratification relates back to the performance of the act, and renders the partnership good from the beginning with all the rights and liabilities incident thereto. Williams v. Butler, 35 Ill. 544.

If a person holds himself out as a partner of another by his acts, and a third person deals with that other person on the faith of an existing partnership, the first may be held liable to the creditor, notwithstanding there was in fact no partnership. Smith v. Knight, 71 Ill. 148; Kitner v. Whitlock, 88 Ill. 513.

Stock placed on land used in business, presumed partnership property. Laswell v. Robbins, 39 Ill. 209.

A partner is at once the principal and agent; principal for himself and agent for copartner. Williams v. Butler, 35 Ill. 544; Kitner v. Whitlock, 88 Ill. 513; Raymond v. Vaughn, 128 Ill. 256.

A party desiring to avail himself of any statutory provision should plead the same, and a party desiring to avail himself or herself of the defense of the plea of coverture should plead it. Rickertson et al. v. Childs, 91 Ill. 154.

Mr. Justice Lacey delivered the opinion of the Court.

This was a suit brought by appellee on a promissory note purporting to be given by "Freeman & Orr," to appellee for $345 dated February 8, 1893, due in ten months from date with seven per cent interest. Appellant opposed a

plea of the general issue sworn to, thus raising the issue of the joint liability of the two defendants, and that of appellant as one of them. The note was signed by joint maker, Orr claiming to have authority as a partner.

There were three questions in contention before the jury: First, whether a partnership existed between appellant and Wilmer E. Orr, who signed the note in the name of Freeman & Orr? Second, whether appellant, through the agency of her husband, Frank D. Freeman, gave the authority and authorized Orr to sign the note as it was signed? Third, whether appellant was estopped from denying that she was liable on the note by reason of her taking a chattel mortgage on the horses and cows purchased at appellee's sale from Orr to secure her for one-half the purchase money she would be liable for on Orr's one-half?

The first contention depends on the construction of a certain lease given by appellant to said Orr, dated 1892, whereby the parties to the lease agreed that "in consideration of the appellant leasing to Orr about 337 acres of farming land, appellee was to receive as rent, etc., the undivided one-half of all the produce raised on the farm, corn, oats, potatoes, hay, and all other produce which might be raised, etc., and each party was to be the owner of the undivided one-half of all the live stock to be placed on said premises or with which the same should be stocked, and should be chargeable of one-half of the valuation which might be agreed upon as the value of live stock purchased, or purchased by either party, * * * and all the live stock shall be fed from the produce raised upon the said premises, and in case of sale of any live-stock, and proceeds realized from such sale shall be divided equally between the parties at the time of the sale."

"Said party of the first part (appellant) further agrees to take a note secured by chattel mortgages from said party of the second part (Orr) for a sufficient sum of money, to enable him to pay for his half of the stock, which may be upon the said land and premises owned jointly as aforesaid, for such sum as said second party may need over and above the amount he may be able to furnish in payment of his share

of the goods and chattels which shall be owned in equal shares as aforesaid, said chattel mortgage to convey the second party's interest in goods and chattels which may at the time be owned jointly by the parties aforesaid," etc. The work horses and farm machinery were to be owned jointly, the second party paying for all the repairs on the machinery and for all labor and services upon the farm, and each party to pay one-half of all the threshing bills and for all other expenses for farming operations to be paid by the party of the second part.

Among other clauses it was stipulated "that in case it becomes necessary to buy grain or feed for stock or for seeding purposes, each of the parties hereto shall pay one-half of the purchase money."

And it was "further agreed that all the expenses that may be jointly incurred as aforesaid shall first be fully paid and discharged before any division of proceeds realized from either produce or stock shall be made."

It will be seen that by the terms of the above lease there was no general partnership authorizing Orr to purchase any stock or other thing on joint account or on the credit of the lessor, or lessee and lessor. No such authority was given him nor any general provision authorizing the use of the appellant's name in purchasing stock. See Blue v. Leathers, 15 Ill. 31; Fawcet v. Osborn, 32 Ill. 411. It is insisted by Orr and he testifies on the trial that the husband of the appellant gave him authority to go to sales and buy stock or part of it, and give "our note for it and sign it Freeman & Orr," and also to borrow money from Campbell's bank, and told him to buy colts.

That he, Orr, at appellee's sale, bought two colts, seven cows, or five cows and two heifers, and gave the note in question for them, and signed it "Freeman & Orr," and that appellant's husband knew that the notes were given and sanctioned it, and saw the property when Orr brought it on the farm; that he included the same property in a chattel mortgage covering Orr's indebtedness to appellant for stock under the lease and also the stock purchased of appellee,

amounting to $3,700; that there was a sale under this chattel mortgage and Mr. Freeman bid in his (Orr's) one-half interest including the property purchased of appellee, and gave Orr credit on the note for the entire amount bid. He further testified that appellant had never anything to say to him (Orr) about the management of the farm, the purchasing of stock or the borrowing money or anything of the kind. He never applied to appellant for any money to buy his share of the stock. He dealt entirely with Freeman.

The chattel mortgage sale appears to have been an accommodation one for Orr; as the property was turned back to him the same as it was held by him before, and he then fed it and got it in condition for a public sale.

Appellant and her husband were in Florida when the stock was purchased and the note in suit given. The testimony of Orr was somewhat corroborated by Tate and other witnesses as to the husband of appellant's transactions in ratifying the action of Orr in the giving of the note and the taking the chattel mortgage and sale under it.

And the husband of the appellant contradicted the above testimony, and testified on the trial that all he had to do as the agent of his wife was to look out for the property that was chattel mortgaged, and gave Mr. Tate the note and mortgage and told him to look after it, if any of it was sold to keep a correct account and indorse it on the note; that he had only limited authority from his wife; that he would advise with her what he was going to do and did nothing without her approval; that he did not direct Mr. Orr at all; that he had no authority to sign notes, leases or contracts, and authorized no one to do so; that he gave Mr. Orr no such authority as he claims as to signing notes with the firm name; that appellant knew nothing about drawing the chattel mortgage of April 7, 1893; that Mr. Tate drew it; that appellant knew nothing about appellee's note being put in the mortgage.

It will be seen that it was a disputed question as to whether appellant's husband ever ratified the execution of appellees' note in any way even if he had the authority so to do, of which there appears to be no direct evidence.

As to whether the appellant is estopped from denying the execution of the note depends upon the circumstances whether she knowingly accepted the benefits of the purchase by Orr of the cattle and the giving of her note as a partner with Orr. If she had not authorized such transactions and was not aware of such a thing having been done, she could not be held to have ratified the same by accepting a chattel mortgage from Orr for his one-half interest therein, although the cattle had been afterward sold for the joint benefit of herself and Orr. She would under such circumstances be liable to Orr for her part of the purchase money which should have been paid by her but was not. But as the sale under the chattel mortgage was one only in form, Orr would be bound to pay his one-half. "Even the recognition and promise to pay a note signed by an unauthorized person would not make a party liable on the same unless it was ratified with full knowledge on the part of the principals of the facts affecting his rights." Gleason, Adm'r, v. Henry, 71 Ill. 109; Reynolds v. Ferree, 86 Ill. 570.

The lease in question contained none of the elements of a partnership and did not constitute Orr and appellant partners, and the court so told the jury in its instructions for appellant No. 3. Yet the court gave instructions on the part of the appellee to wit, 3, 5 and 6, in which are statements of the law on the general principles of partnership not applicable to any evidence in the case. This must have had a mischievous tendency and was well calculated to mislead the jury, leading it to suppose that the court held that the lease created a partnership, or that the appellant held himself out to the world as a partner with Orr. Again, there was no evidence tending to show that appellant " voluntarily and knowingly conducted herself as reasonably to justify the public or persons dealing with her and Orr in believing they were partners," as held in appellee's instruction No. 3. The appellee's second instruction is to the same purport. The seventh instruction is erroneous in holding by inference and assuming that appellant and Orr were partners, and was also erroneous on the doctrine of ratification. The

eighth instruction for the appellee in defining the extent of the agency of appellant's husband is too broad. He could not bind her for acts in buying stock and in authorizing Orr to buy on joint account with her, and sign joint notes with the name of herself and Orr simply from the fact that "he was the general agent pertaining to the leasing and farming operation of her lands," as the instruction holds. In the first place her husband was not her general agent in leasing her lands according to the hypothesis of the instruction. She signed the lease herself. Besides, the lease did not authorize Orr, the lessee, to buy stock on joint account or for appellant under any circumstances; therefore a general agency to look after farming operations under the lease would not authorize her husband to sanction any acts of Orr outside of the general authority contained in the lease.

In order to do this by virtue of an agency, appellant should have given her husband some special authority, or must have knowingly ratified his acts if he went beyond his authority. The instruction was therefore misleading and erroneous. The fourth and seventh instructions given for appellee are erroneous on the subject of ratification by appellant of the note sued on, in that they tell the jury in substance that if appellant treated the live stock purchased by Orr of appellee "as being owned jointly by himself and Wilmer E. Orr, she would be jointly liable on the said note with said Orr."

This, as we have shown above, could not have been the case, unless she did so with the knowledge of all the facts concerning the purchase and the giving of the note, and as the court fully instructed the jury for appellant in her fourth and fifth instructions. The giving of the last named instructions for appellant would not have the effect to cure the error in those given for the appellee. It is improper for the court to give the jury an option as to which instructions it may take as law. The court is the judge of the law in all civil cases, and its instructions should be consistent and harmonious. For the errors noted in giving the instructions for the appellee named, the judgment of the court below is reversed and the cause remanded.