THE JACKSON PAPER MANUFACTURING COMPANY

*v.*

THE COMMERCIAL NATIONAL BANK.

| 199 | 151 |
| 214 | ³525 |

*Opinion filed October 25, 1902.*

1. PRINCIPAL AND AGENT—*rule as to implied authority of agent to endorse check.* Authority of an agent to endorse commercial paper can only be implied where the agent would be unable to perform the duties of his agency without the exercise of such authority.

2. SAME—*the authority to collect debts is not authority to endorse bills.* Authority of an agent to collect bills and receipt therefor carries no implication of authority to endorse negotiable paper.

3. SAME—*party relying on implied authority must have knowledge of the acts.* While authority to endorse negotiable paper may be presumed from acts of recognition in former instances, yet those acts must be known to the party setting them up, and if he accepts a check shown upon its face to be endorsed by an agent, he must prove that the facts giving color of authority to the agent were known to him.

4. SAME—*what acts not sufficient to raise inference of authority to endorse checks.* That a party accepting a check endorsed by an agent had seen the agent at the payee's mill engaged in managing its business, had seen him opening mail, giving orders to the men and countersigning checks drawn by the treasurer of the company to pay for material purchased by the agent, does not justify the implication that he had authority to endorse checks.

5. SAME—*effect of possession of check.* That the superintendent of a manufacturing company has a check in his possession given in payment for goods purchased of such company by a customer, does not authorize any one to purchase or cash the same for him upon his endorsement of the company's name thereon by himself, as superintendent.

6. BANKS—*effect of act of certifying check.* By certifying a check a bank assumes the duty to pay the check only to the payee or upon the payee's genuine endorsement, and having direct notice of the endorser's agency from his signature as the payee's superintendent, it is bound to take notice of the limitations of his authority.

7. EVIDENCE—*burden of showing stranger's authority to endorse check is upon party asserting it.* The burden of showing the authority of a stranger to a check to endorse the same for the payee is upon the drawee, if he would escape liability to pay it over again to the payee after paying it upon an endorsement showing, upon its face, that it was not made by the payee.

*Jackson Paper Co.* v. *Commercial Bank,* 99 Ill. App. 108, reversed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Marcus Kavanagh, Judge, presiding.

This is an action in assumpsit, brought on April 18, 1898, in the superior court of Cook county by the appellant, the Jackson Paper Manufacturing Company of Jackson, Michigan, against appellee, the Commercial National Bank of Chicago. The declaration contained two special counts, and the common counts. The special counts are based on a check, bearing date December 18, 1896, payable to the order of the Jackson Paper Manufacturing Company, drawn on the Commercial National Bank, for the sum of $325.65 by J. Herz & Son. The defendant below, appellee here, filed a plea of general issue; and the trial below resulted in verdict and judgment in favor of appellee. An appeal was taken to the Appellate Court where the judgment has been affirmed; and the Appellate Court has granted a certificate of importance. The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court.

Bowen W. Schumacher, for appellant.

Tenney, McConnell, Coffeen & Harding, for appellee.

Mr. Chief Justice Magruder delivered the opinion of the court:

The errors, assigned by the appellant and relied on for a reversal of the judgment, are the refusal to admit testimony offered in behalf of the plaintiff, the admission of testimony in behalf of the defendant over the objection of the plaintiff, the refusal to give instructions offered by the plaintiff, the giving of instructions in behalf of the defendant, and the overruling of the motion for a new trial.

*First*—The main question, arising out of the action of the trial court in the admission and refusal of testimony, and in the giving and refusal of instructions, relates to the authority of the superintendent of a manufacturing corporation to endorse a check, made payable to the order of that corporation, and given in payment of a debt, created by the purchase of goods from the corporation by the drawer of the check.

The appellant was engaged in the manufacture and sale of paper at Jackson, Michigan. In January, 1895, it employed one Charles A. Jackson to act as superintendent of its mill at Jackson, Michigan; and he continued to act as such superintendent from January, 1895, to the latter part of December, 1896, or the first of January, 1897. In December, 1896, Jackson went to Chicago to solicit orders for the company, and to make sales of paper for it. J. Herz & Son and E. W. Copelin & Co., paper dealers of Chicago, were customers of the appellant. J. Herz & Son were indebted to the appellant at that time in the sum of between $300.00 and $400.00. Jackson went to see J. Herz & Son at their store in Chicago, and settled with them their account with appellant. J. Herz & Son on December 18, 1896, gave to Jackson their check of that date for $325.65, payable to the order of the Jackson Paper Manufacturing Company, and drawn upon the Commercial National Bank of Chicago. Jackson took this check to E. W. Copelin & Co. of Chicago, and asked E. W. Copelin to cash it for him. Copelin had done business with the appellant, and had visited the mill of appellant at Jackson, Michigan, and had seen C. A. Jackson there acting as superintendent and manager of the mill. Jackson endorsed the check as follows: "Jackson Paper Mfg. Co., C. A. Jackson, Supt.," and turned it over to Copelin. Copelin procured the check to be certified by the Commercial National Bank upon which it was drawn, and gave Jackson the currency for it. Copelin then endorsed the check over to the American Exchange Na-

tional Bank, with which he did business, and deposited it to his credit in the American Exchange National Bank. The check went through the Chicago clearing house on December 19, 1896, and was paid by the Commercial National Bank on December 21, 1896.   The amount thereof was charged to the account of J. Herz & Son., the drawers of the check.

When Jackson thus obtained the money upon the check from Copelin, he did not remit the money to the Jackson Paper Manufacturing Company in Michigan; and the amount thereof was never received by the appellant.   The appellant learned nothing of the whereabouts of Jackson until in January, 1897, when it then learned of his death by suicide in New Orleans.   About the same time it learned of his collection of this money from J. Herz & Son through letters received from the latter.

If C. A. Jackson had authority to endorse the name of appellant to the check, so as to transfer good title thereto to E. W. Copelin & Co., then the judgments of the lower courts are correct, but if he had no authority to endorse the check for the appellant, then such judgments are wrong, and the rulings of the court below in the admission and exclusion of evidence and in the giving and refusal of instructions were erroneous.

The evidence is clear and uncontradicted, that Jackson had no express authority from the appellant to endorse checks in its name.   Indeed, it is not contended by the appellee, that Jackson had any express authority to make any such endorsements, but it is claimed that he had implied authority so to do.   The appellee contends that his authority to make the endorsement is to be implied from the nature of his duties as appellant's superintendent and manager, and from his conduct in connection with the business of appellant.

As superintendent of the mill, Jackson was under the direction of Nathan S. Potter, who was the treasurer

and managing director of the corporation.  Jackson had charge of the buying of the material, and of the hiring of the men, and looked after the manufacture and sale of paper.  He was paid a certain annual salary, and was entitled to a percentage of the net profits of the business in excess of a certain amount.  His brother, Gale Jackson, was the book-keeper of the corporation.  Appellant had a president, a treasurer, and a secretary, though the president and secretary appeared to take but little active management of the company's business.  Sometimes, when Jackson was traveling, he collected money from customers of the appellant, which was charged by his brother, the book-keeper, to his account, but the testimony tends to show that appellant had no knowledge of these charges until after the death of Jackson.  Sometimes, when Jackson was on a trip for the company for the purpose of selling goods, or making collections, he would adjust accounts due to the company.  It was not shown that any collections made by him had ever been paid by check, payable to the order of the appellant, except the check here in controversy.  It was shown that the letter-head of the Jackson Paper Manufacturing Company had printed at the top of it, not only the names of the president of the company and the treasurer of the company, but also the name of "C. A. Jackson, Supt." The only person, who had express authority to sign notes for the company, and draw checks for the company, and endorse its paper and checks, was Nathan S. Potter, the treasurer, who, as managing director, had also the general supervision and management of the business. Sometimes one P. B. Loomis, Jr., the secretary of the company, endorsed Potter's name when he was absent. It appears, also, that Potter sometimes authorized Gale Jackson, the book-keeper, to endorse checks and drafts in Potter's name for deposit in the People's National Bank of Jackson, Michigan, where appellant kept its account.  It is also shown, that Jackson sometimes counter-

signed checks drawn by appellant upon its own bank, that is to say, he wrote his name across the end of the check over the word "countersign," though this was not done in the case of all checks drawn by appellant upon its bank. The checks, so countersigned by him, were drawn by appellant to pay for purchases, which Jackson would make for the use of the mill; and the object of such countersigning was to show that the amount of the purchase was correct, Jackson having charge of the purchase of material to be used in the manufacture of paper by the appellant. The checks, however, given by the appellant, were all drawn by Potter, the treasurer.

The weight of authority seems to be in favor of the contention of appellant, that authority to endorse commercial paper can only be implied, where the agent is unable to perform the duties of his agency without the exercise of such authority. In other words, the power of an agent to endorse commercial paper for his principal must be a necessary implication from an express authority conferred upon such agent. Wherever such power is implied from the acts of the agent, the acts, subject to such implication, must be acts of a kind like those from which the implication is drawn.

Parsons in his work on Contracts (vol. 1,—6th ed.— p. 62) says: "An agent's acts in making or transferring negotiable paper (especially if by endorsement) are much restrained. It seems that they can be authorized only by express and direct authority, or by some express power which necessarily implies these acts, because the power cannot be executed without them."

The power of an agent to bind the principal by the making or endorsing of negotiable paper can only be charged against the principal by necessary implication, where the duties to be performed cannot be discharged without the exercise of such a power, or where the power is a manifestly necessary and customary incident of the character bestowed upon the agent, and where the power

is practically indispensable to accomplish the object in view.  An agent cannot bind his principal by making or endorsing notes for his own benefit, or the benefit of third persons.  (Mechem on Agency, secs. 389-392).

It is true that Jackson was the superintendent of appellant's mill, and managed the business of running the mill; but, "an agent having general authority to manage his principal's business, has, by virtue of his employment, no implied authority to bind his principal by making, accepting or endorsing negotiable paper.  Such an authority must be expressly conferred, or be necessarily implied from the peculiar circumstances of each case. It may undoubtedly be conferred and by implication, but it will not be presumed from the mere appointment as general agent." (Mechem on Agency, sec. 398).

Daniel in his work on Negotiable Instruments, (vol. 1, —4th ed.—sec. 292) says: "When the authority to execute or endorse a negotiable instrument is sought to be deduced from an agency to do certain other acts, it must be made to appear affirmatively, that the signing or endorsement of such an instrument was within the general objects and purposes of the authority, which was actually conferred.  And in interpreting the authority of the agent, it is to be strictly construed." We fail to discover anything in the record in the present case to show, that the power to endorse the check here in controversy was within the general objects and purposes of the authority conferred upon Jackson.  Instead of transmitting the check to the appellant, he assumed to sign appellant's name upon the back of the check, and to obtain the cash for it.  The endorsement was evidently made for his own benefit.  There is, of course, some evidence, tending to show that the trip made by him to Chicago was a trip taken in the interest of the business of the appellant, but his accounts show that there was paid to him during the time of his trip sufficient money for his expenses. Copelin & Co., who cashed the check upon his endorse-

ment, had no business, on the 18th day of December, 1896, when the check was cashed, with the appellant, or with Jackson, as the agent of appellant. There is nothing to show that Copelin & Co. at that time owed the appellant anything, or purchased any goods from the appellant at that time through Jackson, as appellant's agent. It may be that Jackson had authority at that time to collect debts that may have been due to the appellant as his employer, but "authority to collect debts and give discharges carries no implication of authority to endorse a negotiable note." (1 Daniel on Neg. Inst.—4th ed.—sec. 293). "The nature and extent of an implied authority are deemed to be limited to acts of a like nature with those from which it is implied." (1 Am. & Eng. Ency. of Law,—2d ed.—p. 1002). It is not shown by any evidence whatever in the record, that Jackson ever endorsed a check for the appellant, except the check here in controversy. It is not proven that he ever did any such act as the endorsement of a check or note, which was approved and ratified by the appellant after it was done.

The statements, made by the text writers above referred to, appear to be sustained by the decided cases. (*Boord* v. *M. Ferst's Sons & Co.* 39 Fla. 381; *Gregory* v. *Loose,* 19 Wash. 599; *Dodge* v. *National Exchange Bank,* 30 Ohio St. 1; *Doubleday* v. *Kress,* 50 N. Y. 410; *Smith* v. *Co-operative Dress Ass.* 12 Daly, 304; *Atkinson* v. *St. Croix Manf. Co.* 24 Me. 176; *Middlesex County Bank* v. *Hirsch Bros.* 24 N. Y. St. 297; *Graham* v. *United States Savings Inst.* 46 Mo. 186; *Smith* v. *Gibson,* 6 Blackf. 370; *Railway Equipment and P. Co.* v. *Bank,* 82 Hun, 9; *New York Iron Mine* v. *Bank of Negaunee,* 39 Mich. 644; *Vanbibber* v. *Bank of Louisiana,* 14 La. Ann. 486; *Jackson* v. *Bank,* 92 Tenn. 154).

While it is well settled, that an authority to draw, accept or endorse bills may be presumed from acts of recognition in former instances, yet those acts must be known to the party setting them up. (*Rawson* v. *Curtiss,* 19 Ill. 456; *Maxey* v. *Heckethorn,* 44 id. 437; *St. John* v.

*Redmond*, 9 Porter, 432; *Cash* v. *Taylor*, 8 L. J. (O. S.) 262; Chitty on Bills,—13th Am. ed.—p. 41, *32). That is to say, where a party, accepting a check or note or bill endorsed by an agent and shown upon its face to be endorsed by an agent, maintains that the agent had apparent authority to make such endorsement, he must prove that the facts, giving color of authority to the agent, were known to him.   If such person has no knowledge of such facts, he does not act upon them, or part with anything on the faith of any apparent authority, and, therefore, is not in a position to claim anything from such apparent authority.   (1 Daniel on Neg. Inst.—4th ed.—sec. 297, and other authorities last above referred to).  Chitty on Bills, (13th Am. ed. p. 41, *supra*,) says: "But it must appear that the bill or note is taken upon the faith of prior similar transactions; and, therefore, the holder of a bill purporting to be, but not in fact accepted by the person to whom it is addressed, cannot recover against the apparent acceptor by proving a fact subsequently discovered, that on a former occasion the defendant had given a general authority to the person, who accepted in his name, to accept bills for him; to make such authority available, the holder must show either that the authority remained unrevoked at the time of the acceptance, or that he took the bill on the faith of such authority."

It is insisted by the appellant, that the appellee bank did not show, and did not propose to show, that appellee had any knowledge of the acts relied upon, as showing by implication the authority of Jackson to endorse the check.   To this contention the appellee replies, that it was not necessary for it to prove its knowledge of prior similar transactions, and that it accepted and paid the check on the faith of such transactions, but that it was sufficient if Copelin & Co., who purchased the check from Jackson, had such knowledge.  In other words, the question, as presented by the appellee, is whether Copelin & Co. obtained good title to the check through the endorse-

ment of Jackson. Appellee claims that, if Copelin & Co. had good title to the check, that firm would transfer by its endorsement no worse title than it had. Without stopping to discuss this contention, or to pass any opinion upon it, it may be admitted for the purposes of this case to be correct, and yet the question remains, whether there were any acts or circumstances, brought home to the knowledge of Copelin & Co. which would justify them in purchasing this check upon Jackson's endorsement without making inquiry as to his authority. It is true that Copelin had been to Jackson, Michigan, and had seen Jackson in charge of appellant's mill, and had seen him engaged in the management of appellant's business. There is also evidence to the effect that he saw Jackson opening mail, and giving orders to the men in the employ of the company, and countersigning some of the checks drawn by the company upon its bank to pay for material. But, under the authorities above referred to and quoted from, none of these acts were sufficient to justify Copelin & Co. in inferring that Jackson had authority to endorse the check.

The check was drawn by J. Herz & Son upon the appellee bank. In the present case, it is not denied that Herz & Son had funds enough in the appellee bank to pay the check, so drawn by them to the order of appellant. The doctrine of this court is that, "when the check of a depositor is presented to the banker, if the deposit is sufficient to pay the check, it is an absolute appropriation of the amount of the check to the holder, and that the contract, implied by law between the banker and his depositor for the benefit of whoever may become the holder of the check, is one upon which such holder can maintain an action." (*Gage Hotel Co.* v. *Union Nat. Bank*, 171 Ill. 531). In the present case it appears that the check was certified by the appellee. By such act of certification appellee assumed the duty to pay the check only to the appellant, the payee therein, or upon ap-

pellant's genuine endorsement. Having direct notice of Jackson's agency by his signature upon the back of the check as superintendent, appellee was bound to take notice of the limitations upon his authority. When it certified the check, it entered into an absolute undertaking to pay it when presented at any time within the time fixed by the Statute of Limitations, and was, therefore, estopped to deny that it possessed sufficient funds of the drawer to pay the check. (*Metropolitan Nat. Bank* v. *Jones*, 137 Ill. 634; *Middlesex County Bank* v. *Hirsch Bros.* 24 N. Y. St. 297; *Smith* v. *Co-operative Dress Ass.* 12 Daly, (N. Y.) 304; *Dowden* v. *Cryder*, 55 N. J. L. 329).

The mere fact, that Jackson was in possession of the check which he thus obtained from J. Herz & Son, did not authorize him to transfer it to Copelin & Co., or authorize Copelin & Co. to purchase it from him upon his endorsement of appellant's name thereon; nor was any authority thereby conferred upon the appellee bank to pay the same. In *Dodge* v. *National Exchange Bank, supra,* it was held that "the rightful possession of a check, made payable to the order of a particular person, confers no authority on the drawee to pay the same to the person having such possession, without the genuine endorsement of the payee," and that, if the drawee relies upon false representations as to identity, for which neither the drawer nor payee is responsible, he makes payment to a wrong person at his peril.

In *Doubleday* v. *Kress, supra*, it was held, that the possession by an assumed agent of a promissory note, payable to the order of the payee, and not endorsed by him, is not alone sufficient evidence of his authority to authorize a payment thereof to him. In *Smith* v. *Co-operative Dress Ass. supra*, it was held that a party making a special contract with the general manager of a corporation knows that he is making it with a mere agent, and he is bound at his peril to ascertain the agent's real authority. In *Atkinson* v. *St. Croix Manf. Co. supra*, it was held that

199—11

proof, that a person was an agent of an incorporated company, and had charge of the business of said company at a certain place, was not alone sufficient to show that such person was authorized to draw a note or bill in behalf of the company, and that the acceptance of a draft by the treasurer of an incorporated company without evidence of any authority in him to perform such acts did not thereby render the company liable thereon.

In *Smith* v. *Gibson, supra,* it was held that the authority of an agent to buy and sell goods for his principal did not confer a power to bind him by drawing or endorsing bills and notes, and that no agency will be implied in such cases, unless there is some evidence of recognition by the principal in the particular case, or in similar cases.

In *Railway Equipment and P. Co.* v. *Bank, supra,* which was an action brought to recover for the conversion of certain checks belonging to the plaintiff, it was held that the fact, that the agent there was held out as the manager of the business of the corporation, in no way authorized the conclusion, that he had the right to bind the corporation by his signature to commercial paper.

In *New York Iron Mine* v. *Bank of Negaunee, supra,* it was held that a general agent, without being specially empowered so to do, had no authority to make promissory notes in the name of his principal, and that, where a general agent in Michigan was accustomed to endorse the company's paper for collection or discount, and to draw on the treasurer in New York for the current needs of his corporation and his drafts were duly paid, this could not imply authority in the agent to make promissory notes in the name of the corporation.

In *Vanbibber* v. *Bank of Louisiana, supra,* it appeared that the drawers of a check were accustomed to have deposits of funds at the bank, and to draw occasionally against the same, and it was there said: "The drawers of this check requested the bank to pay its amount to plaintiffs, or order. The bank had no right to pay it to

any other person. It has, however, paid it upon a forged endorsement, and the amount of the check must be considered to be still in the bank, subject to the rights of plaintiffs. * * * If there was a negligence anywhere, it was upon the part of the bank. Their duty to their depositor required them to be satisfied that the endorsement of the check was that of the payees. * * * It is also established that the collector was never authorized by the plaintiffs to endorse any check drawn to the order of the firm, or any check."

In *Graham* v. *United States Savings Inst. supra*, which was a case similar in its facts to the case at bar, it was said by the court: "This suit is brought to recover the amount of two checks, which were drawn on the defendant by third parties in favor of the plaintiffs and made payable to their order. The drawers delivered the checks to the plaintiffs' collecting agent, one Dixon, in settlement of certain bills which the latter had in charge for collection, being bills due from the drawer of the checks to the plaintiffs. Dixon endorsed the defendant's firm name upon the checks and presented them at the bank and drew the money upon them, which he seems to have appropriated to his own use, without rendering any account thereof to the plaintiffs. * * * The question presented is purely one of agency. Was Dixon the plaintiffs' agent to endorse negotiable paper given in settlement of debts due to his employers? He was their agent to adjust such claims and receive the amounts due upon them, and to do those subordinate and incidental things usual and customary in the accomplishment of the main purpose had in view, to-wit: the collection. The main purpose had been accomplished when he had received the checks payable to his principals. His duties as a collector ceased at that point. His next duty was to account with his employers for the proceeds of his collections, and turn over the checks to them, to be disposed of as they might judge proper. The endorsement of the

checks was no necessary incident of the collection of the accounts."

In *Jackson* v. *Bank*, 92 Tenn. 154, which is also a case similar in its facts to the case at bar, the Supreme Court of Tennessee says: "No authority will be implied from an express authority. Whatever powers are strictly necessary to the effectual exercise of the express powers will be conceded to the agent by implication. In order, therefore, that the authority to make or draw, accept and endorse commercial paper as the agent of another may be implied from some other express authority, it must be shown to be strictly necessary to the complete execution of the express power. The rule is strictly enforced, that the authority to execute and endorse bills and notes as agent, will not be implied from an express authority to transact some other business, unless it is absolutely necessary to the exercise of express authority. (Tiedeman on Commercial Paper, sec. 77). Possession of a check, payable to order, by one claiming to be agent of the payee, is not *prima facie* proof of authority to demand payment in the name of the true owner. (Ibid. 312). A bank is obliged by custom to honor checks payable to order, and pays them at its peril to any other than the person to whose order they are made payable. (Ibid. 431). It must see that the check is paid to the payee therein named upon his genuine endorsement, or it will remain responsible. (*Pickle* v. *Muse*, 4 Pickle, 380.) An authority to receive checks in lieu of cash in payment of bills, placed in the hands of an agent for collection, does not authorize the agent to endorse and collect the checks. (*Graham* v. *United States Savings Inst.* 46 Mo. 186; 1 Wait's Act. & Def. p. 284; 1 Daniel on Neg. Inst. sec. 294). The endorsement of the check was not a necessary incident to the collection of the accounts. (*Graham* v. *United States Savings Inst.* 46 Mo. 186). It follows that a drummer or commercial traveler, employed to sell and take orders for goods, to collect accounts and receive money and

checks payable to the order of his principal, is not, by implication, authorized to endorse such principal's name to such checks. No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages, and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security." (See also *Chicago Electric Light Renting Co.* v. *Hutchinson*, 25 Ill. App. 476; *Commercial Nat. Bank* v. *Lincoln Fuel Co.* 67 id. 166; *Beattie* v. *National Bank of Illinois*, 174 Ill. 571).

A person dealing with an agent takes the risk as to the extent of his authority, and is bound to inquire into his authority. (*Reynolds* v. *Ferree*, 86 Ill. 570, and authorities last above referred to).

The rulings of the court below upon the admission and exclusion of evidence, and its action in giving and refusing instructions, were in opposition to the views hereinbefore expressed. We are, therefore, of the opinion that the trial court erred in this respect.

*Second*—It was held by the court below in the instructions, given by it to the jury, that the burden of disproving the authority of Jackson to endorse the name of the appellant upon the check in question was upon the appellant. In our opinion this holding was wrong. The appellant asked the court to instruct the jury, that "the burden of showing the authority of a stranger to a check to endorse the same for the payee is upon the drawee, if he would escape liability to pay over again to the payee," and this instruction was refused by the court. It should have been given. Where one attempts to take advantage of the act of an agent, it is for him to show the authority of that agent. The appellee relied for its defense upon the proposition, that C. A. Jackson had authority to endorse appellant's name upon the check, and, there-

fore, the burden was upon the appellee to prove such authority.

In *Hardesty* v. *Newby*, 28 Mo. 567, it was held that, where a matured negotiable promissory note is delivered by the payee without endorsement to an agent for collection, the possession of the note by the latter will not raise a presumption that he has authority to assign the same, and the burden of proving an assignment by authority of the payee rests upon the party claiming under such alleged assignment.   In *Hays* v. *Lynn*, 7 Watts, 525, it was said by the court: "A party who avails himself of the act of an agent must, in order to charge the principal, prove the authority under which the agent acted. The burthen of the proof lies on him to establish the agency and the extent of it."   In *Morgan* v. *Bank of the State of New York*, 1 Duer, (N. Y.) 438, it was said by the court: "When a bill or check is payable to order, to justify the application to its payment of the funds of the drawer, it must be proved that the required order was in fact given—in other words, it must be proved that the endorsement was genuine—and the burden of this proof rests upon the person or bank upon whom the bill or check is drawn."   In *Bank of the University* v. *Tuck*, 101 Ga. 104, it was held that the maker of a negotiable promissory note pays the amount due thereon to any person other than the holder at his own risk, and a defense to an action on such note, setting up payment to one authorized by the holder to collect for him, casts upon the defendant the burden of showing, not only that he has paid the money, but that he has made payment to a person authorized by the holder to receive it, or else that it actually reached the holder's hands.   In *Commercial Nat. Bank* v. *Lincoln Fuel Co.* 67 Ill. App. 166, it was said: "But the mere fact that Gordon & Co. had possession of the check affords no presumption of their authority to endorse it, nor would mere authority possessed by Gordon & Co. to accept checks from customers of appellee for

coal sold give to them either express or implied authority to endorse such checks by the name of appellee. And if the drawee of such a check pays the same upon an endorsement that is not genuine, or is not authorized, it does so at its peril, and the burden of showing the authority of the stranger to the check to endorse the same for the payee would be upon the drawee, if it would escape liability to pay it over again to the payee." (*Jackson* v. *Bank, supra*).

The judgment of the Appellate Court, and the judgment of the superior court of Cook county, are reversed, and the cause is remanded to the superior court of Cook county for further proceedings in accordance with the views herein expressed.          *Reversed and remanded.*