Strawn Farmers' Elevator Co. v. Bennett & Co., 168 Ill. App. 428.

not, and also that it did not submit to the jury the question whether or not, if there had been such an alteration in the date of the note, it had been made by the holder or with his knowledge or consent. We do not consider that these objections are well taken. If the date of this note had been changed from 1891 which would have made it an outlawed note long before Mrs. Schubert died, in 1897, so as to bring it within the Statute of Limitations, that would be a material alteration, and that question was to be decided by the court and not by the jury. Milliken v. Marlin, 66 Ill. 13; Donnell Mfg. Co. v. Jones, 49 Ill. App. 327. The court was not required to submit to the jury the question whether or not said alteration, if there was one, was made by the holder or with his knowledge or consent, as there was no evidence that the note had ever been in the custody of any one but John J. Schubert.

Appellant assigned for error the failure of the trial court to grant a new trial on the ground of newly discovered evidence, but as that assignment has not been argued, it must be considered as waived.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*

---

## Strawn Farmers' Elevator Company, Appellee, v. James E. Bennett & Company, Appellant.

### Gen. No. 5600.

1. PRINCIPAL AND AGENT—*who not general agent.* Held, under the evidence, that the agent in question in this case was not a general one and that he was not authorized to bind his principal to the transactions in grain involved in this case.

2. PRINCIPAL AND AGENT—*obligation to ascertain extent of authority.* Persons dealing with an assumed agent are bound at their peril to ascertain not only the fact of the agency but the extent of the agent's authority.

3. PRINCIPAL AND AGENT—*doctrine of ratification stated.* The doctrine of ratification of an unauthorized act is that the principal shall be fully and fairly informed of all the facts and circumstances.

4. NEGOTIABLE INSTRUMENTS—*who not agent to execute etc.* To constitute an agency to execute promissory notes etc., it is essential that the authority be express or be established by showing that like acts have been performed by the agent and authorized or ratified by the principal.

5. AMENDMENTS AND JEOFAILS—*when leave to file verified plea at close of all evidence will not reverse.* In the absence of an abuse of discretion the so granting of leave to file a verified replication to pleas will not reverse.

6. INTEREST—*when cross-error assigned for failure to allow interest upon verdict not sustained.* In order that a cross error complaining of the failure of the court to allow interest on the verdict from the time of its rendition to the time of the entry of judgment may be sustained it must appear that the omission of the court so to do was pointed out in the trial court.

Assumpsit.   Appeal from the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding.   Heard in this court at the October term, 1911.   Affirmed.   Opinion filed April 25, 1912. *Certiorari* denied by Supreme Court (making opinion final.)

MOSES, ROSENTHAL & KENNEDY and C. F. CARRITHERS, for appellant; HENRY H. KENNEDY, WALTER BACHRACH, S. SIDNEY STEIN and EDWARD D. WALLACE, of counsel.

A. C. NORTON and F. A. ORTMAN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

The Strawn Farmers' Elevator Company, a corporation, owned and operated an elevator at Strawn, Illinois, and another at Risk, a mile or two distant, where it bought, stored, sold and shipped grain.   One J. W. Jordan was in charge of these elevators under a written contract.   During the time of such employment he speculated on the Board of Trade in Chicago in the name of the Elevator Company, through James E. Bennett, a broker, formerly doing business as

430    APPELLATE COURTS OF ILLINOIS.

Strawn Farmers' Elevator Co. v. Bennett & Co., 168 Ill. App. 428.

Thomas Bennett & Co., later as James E. Bennett & Co. To pay losses sustained in these speculating transactions, Jordan gave Bennett two checks of the Company aggregating $500 and consigned to him a carload of corn, which was sold for $401.47. Later Jordan consigned two more carloads of corn to Bennett, which were sold for $627 and $380.44 respectively, upon which a draft for $325 was paid. During the period of Jordan's speculations he gave Bennett a note of the Elevator Company for $1,500 executed by himself as manager, in payment of losses sustained. When the Elevator Company learned of these transactions, it discharged Jordan and brought suit in *assumpsit* in the Circuit Court of Livingston county against Bennett by the style of James E. Bennett & Company to recover the amount of the checks and the value of the three carloads of corn, less the amount of the draft. The declaration contained the common counts only, to which was interposed a plea of *non-assumpsit* and a number of special pleas, the only one necessary to mention here being a plea of set-off based on the note. At the close of all the evidence a verified replication was filed, denying Jordan's authority to execute and deliver the note. There was a verdict for $1,583.91 for the Elevator Company, upon which judgment was entered, and from which this appeal is prosecuted.

It is contended that because appellee might, under its charter, deal on the board of trade in the manner in which the trades were conducted by Jordan, that by constituting him general agent, appellee is bound by his acts. The question presented by this record is not the scope of appellee's authority to deal in grain, but the scope of Jordan's authority to bind it in such transactions.

Appellee's principal office was at Strawn, and, as above stated, it had but two elevators. Jordan's contract empowered him "to take charge of the elevator,

* * * in the capacity of manager, * * * to conduct all business connected therewith in the way of buying grain and storing or disposing of the same, to fix prices paid for grain * * * to draw bills of lading, to receive and pay out all moneys and make all contracts necessary in the regular transaction in said business of buying, selling and storing grain, to draw drafts and issue checks in the name of said corporation, to keep such itemized books of account showing all business transacted as is customary with grain dealers.'' From this we think it apparent that the scope of Jordan's authority was limited to the transaction of business connected with the elevators at Strawn and Risk, and necessarily the grain to be handled was limited to the grain which was handled in connection with such elevators. The contention that Jordan was appellee's general agent is not borne out by the proof. He was not so designated in the contract. He never signed his name as such. He never held himself out to be appellee's general agent. All his transactions in connection with the elevators and every paper signed by him as manager is entirely consistent with the position of local manager of the elevators. We are of the opinion that the scope of Jordan's authority was not such as to bind appellee in board of trade transactions.

It will be observed from the quotation from Jordan's contract that he was not expressly authorized to execute and deliver negotiable paper.

In Railway Equipment and P. Co. v. Bank, 82 Hun 8, which was an action brought to recover for the conversion of certain checks belonging to the plaintiff, it was held that the fact that the agent there was held out as the manager of the business of the corporation in no way authorized the conclusion, that he had the right to bind the corporation by his signature to commercial paper.

432    Appellate Courts of Illinois.

Strawn Farmers' Elevator Co. v. Bennett & Co., 168 Ill. App. 428.

In New York Iron Mine v. Bank of Negaunee, 39 Mich. 644, it was held that a general agent, without being specially empowered so to do, had no authority to make promissory notes in the name of his principal, and that, where a general agent in Michigan was accustomed to endorse the company's paper for collection or discount, and to draw on the treasurer in New York for the current needs of his corporation, and his drafts were duly paid, this could not imply authority in the agent to make promissory notes in the name of the corporation.

It is true that Jordan was the manager of appellee's elevators and managed the business of running them; but, "An agent having general authority to manage his principal's business has, by virtue of his employment, no implied authority to bind his principal by making, accepting or endorsing negotiable paper. Such an authority must be expressly conferred or be necessarily implied from the peculiar circumstances of each case. It may undoubtedly be conferred and by implication, but it will not be presumed from the mere appointment as general agent." Mechem on Agency, sec. 398.

"When the authority to execute or endorse a negotiable instrument is sought to be deduced from an agency to do certain other acts, it must be made to appear affirmatively that the signing or endorsement of such an instrument was within the general objects and purposes of the authority which was actually conferred. And in interpreting the authority of the agent, it is to be strictly construed." Daniel on Negotiable Instruments, Vol. 1, 3rd Ed., Sec. 292.

"The nature and extent of an implied authority are deemed to be limited to acts of a like nature with those from which it is implied." 1 Am. & Eng. Ency. of Law, 2nd Ed., p. 1002.

It is not shown by any evidence whatever in the record, that Jordan ever executed and delivered a

promissory note for appellee, except the note here in controversy, and it is not proven that he ever did any such act which was approved or ratified by appellee after it was done.

It was held in the case of Jackson Paper Company v. Commercial Bank, 199 Ill. 151, that proof that an agent was superintendent and manager of a mill, having charge of buying material and manufacturing and selling paper, did not justify an inference that he had authority to endorse checks, and surely the same facts, or the facts in this case, would not justify an inference that Jordan had the more unusual power to speculate in the name of appellee and make and deliver negotiable paper in payment of losses sustained in such transactions. We fail to discover anything in the record in the present case to show that the power to make and deliver the promissory note in controversy was within the general objects and purposes of the authority conferred upon Jordan.

Appellant next contends that as he had no knowledge of the existence of Jordan's contract of employment, it was error for the court to admit the same in evidence over his objection. The object of its admission was to show the limitations of Jordan's authority.

Appellant had an agent living within five miles of the elevators under the charge of Jordan, through whom his board of trade transactions were negotiated. This agent knew that Jordan's business was that of operating the elevators at Strawn and Risk, and that he made no claim to being more than local manager of these elevators, and such knowledge on the part of the agent was the knowledge of his principal. Appellant's dealing with Jordan under such circumstances was on the assumption that Jordan had authority to conduct the board of trade transactions. It is to be remembered that persons dealing with an assumed agent are bound at their peril to ascertain not only the fact of the agency, but the extent of the

434 . APPELLATE COURTS OF ILLINOIS.

Strawn Farmers' Elevator Co. v. Bennett & Co., 168 Ill. App. 428.

agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. It is their right and duty to ascertain the extent of his power, and to determine whether his act comes within the power and is such as to bind his principal. Mechem on Agency, Sec. 276; Reynolds v. Ferree, 86 Ill. 570; Merchants' Nat. Bank v. Nichols, 223 Ill. 41. We are therefore of the opinion that it was not error to admit in evidence Jordan's contract of agency.

It is also contended that appellee ratified Jordan's board of trade transactions. The doctrine of ratification of an unauthorized act is that the principal shall be fully and fairly informed of all the facts and circumstances. Cadwell v. Meek, 17 Ill. 219; Mathews v. Hamilton, 23 Ill. 416; Reynolds v. Ferree, *supra.* It is true that the evidence shows that in each instance a written confirmation of the purchase or sale in Jordan's speculations was sent by mail and addressed to appellee; that such confirmation showed the amount, price, future and the parties of whom the grain was bought or to whom it was sold and that an account was sent by mail to appellee at the end of each month, but the evidence also shows that the same were received by Jordan; that none of the directors or officers of appellee, other than Jordan, had any knowledge of such transactions, and that the records of such transactions were not kept in the regular books of appellee, but that they were kept by Jordan in a private book, and that this book was not seen by any of the directors or officers of appellee other than Jordan. It is obvious that appellee was not "fully and fairly informed" of the circumstances of Jordan's transactions and cannot, under the law, be held to have ratified the same.

Complaint is made of the court's giving appellee's 3rd, 5th, 6th and 7th instructions.

The criticism of the third is that it excludes from the consideration of the jury all evidence of a ratification unless the ratification be at the time of the improper transaction. It is doubtful if the language of the instruction will bear such a construction, but even if true, there was no evidence of any ratification, and for that reason the distinction raised by counsel is ineffective.

The fact that there was no evidence of ratification also answers the first criticism made to the fifth. The further objection that this instruction was calculated to give the jury the impression that Jordan's transactions were gambling ones is not tenable, as it does not assume that his transactions were such. If it did, it was cured by other instructions which plainly told the jury that there was no evidence of any gambling transactions.

It is urged that appellee's sixth instruction is subject to the same objection as the fifth and also that it ignored appellant's theory that Jordan had either express or implied authority to make the deals in question. The contract defining Jordan's powers being in writing, and undisputed, the question whether it expressly or impliedly empowered him to make such deals became one of law for the court, and not of fact for the jury.

Appellee's seventh instruction told the jury that the contract did not authorize Jordan to engage in the purchase and sale of grain on the Board of Trade in Chicago, except such grain as was handled by him through the elevators of appellee, or by means of cars on track or in a territory tributary to Strawn, and that they should find for appellee unless they found that it knowingly permitted Jordan to buy and sell grain on the board of trade in Chicago, in its name disconnected with the actual grain dealt with in the locality of Strawn. We think this instruction in harmony with the views we have herein before ex-

pressed on the question of the scope of Jordan's authority and therefore not subject to the objection raised against it.

It is urged by counsel for appellant that the action of the court in allowing the verified replication to the plea of set-off to be filed at the close of all the evidence was an abuse of discretion, and say, in support of their position, ''While we understand that it is a matter of discretion for the trial court to allow the filing of pleadings, yet we know of no case which can be pointed out where the action of the trial court in allowing the filing of a pleading under circumstances like the case at bar was affirmed.'' They have not called our attention to a case that has been reversed where the discretion of the trial court was exercised under like circumstances. Moreover, the bill of exceptions discloses no exception to the ruling of the court on that question. This trial and judgment and bill of exceptions were before the amendment of 1911 to the practice act went into force. If a proper exception had been preserved the ruling would not have been an abuse of discretion under the facts appearing in this record, as the only purpose of the verified replication would be to put appellant on proof of the execution of the note before it could be admitted in evidence. Before the leave was granted the note had been introduced in evidence. If the filing of the replication in any way prejudiced appellant's rights, he should have made a showing why he could not proceed further with the trial and ask for a continuance. No such motion was made. He chose to go on with the trial. The record shows that the evidence on both sides was then all in and there is nothing to indicate that appellant could or would have produced other or different evidence concerning the consideration or the execution of the note if the replication had been filed before the trial began. Clearly it was not an abuse of the discretion of the trial court to permit the replication to be filed.

The verdict was rendered on December 1, 1910. The judgment was not entered thereon until February 13, 1911, and then for the amount of the verdict only. Appellee assigns a cross error on the failure of the trial court to allow it interest from the date of the verdict to the date of the judgment. It is a sufficient reply to counsel's argument to say that at the time the judgment was entered the court's attention was not called to appellee's right to recover interest. The court was not asked to rule on that subject, and there is nothing in the record to warrant the assignment of the cross error. The affirmance disposes of the motion, taken with the case, relating to the abstract.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*