## John J. Schneider, Warden of the Southern Penitentiary, v. The Lebanon Dairy and Creamery Co.

1. PROMISSORY NOTES—*In the Hands of Agents.*—The deposit of a promissory note with an agent of a third party on condition that it is to be used by such third party for a specified purpose will not confer title so as to authorize the agent's principal to hold the note for a different purpose. The delivery of the note without the preformance of the condition passes no title.

2. SAME—*Delivery to Agents.*—If a note is delivered to an agent to be used for a certain purpose, it will be void, if diverted from that purpose, in the hands of any person having notice of such delivery.

3. SAME—*Authority of Agents to Use for Special Purposes.*—An agent authorized to use a negotiable instrument for a special purpose may apply it to a different use and under certain conditions pass the title. He may fraudulently use it and pass its title to a *bona fide* purchaser for value, but good faith in the purchaser is a necessary element. If the purchaser knows or the circumstances are such as to lead him to believe that the agent has no authority to transfer the note, he will not be protected against equitable defenses of the maker.

4. AGENT—*Who Must Inquire Into His Authority.*—If the agency of a party is made to appear the principal will not be bound beyond the authority of the agent. Persons having notice of the agency are bound to inquire into the agent's authority, or deal with him at their peril.

Assumpsit, on a promissory note. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1897. Affirmed. Opinion filed March 1, 1898.

CHARLES W. THOMAS, attorney for appellant.

All that is necessary to enable any indorsee to sue upon a vote is the legal title to it, and the owner of the

legal title must sue in his own name.    It is no concern of the makers in whom the equitable or beneficiary interest is vested.    Burnap v. Cook, 32 Ill. 168.

In this case the doctrine is affirmed that controversies over the real ownership of a note do not concern the maker; he is acquitted by a judgment in favor of the legal holder. 4 Am. and Eng. Ency. of Law (2 Ed.), p. 496; Story, Prom. Notes (6 Ed.), Secs. 381, 382.

HAMILL & BORDERS, attorneys for appellee.

Knowledge of fraud or illegality impeaches the *bona fide* of the holder and destroys his title.    Daniels on Negotiable Instruments (3 Ed), Sec. 789, p. 739.

Parties dealing with a special agent are bound to know that he is acting within the scope of his powers. Reynolds v. Ferree et al., 86 Ill. 570.

A special agent is one whose authority is confined to a particular or individual instance.    In this case the sole authority conferred on Baker by Seiter was to obtain the note from Gleason and deliver it to Seiter, and this authority constituted Baker Seiter's special agent for that express purpose only.

A special agent is appointed only for a particular purpose and is invested with limited powers.    Chitty on Contracts, 285.

A special agency properly exists when there is a delegation of authority to do a single act.    Story on Agency, Sec. 17.

It is a general rule that if a special agent acts outside of the authority conferred, the principal will not be bound by his acts.    Dart v. Hercules et al., 57 Ill. 446.

A special agent, to bind his principal, must act within the scope of the authority conferred.    A party purchasing of a special agent is bound, at his peril, to know the extent of the agent's authority. Baxter v. Lamont, 60 Ill. 237; Thornton v. Boyden, 31 Ill. 200.

A special power to draw checks, sign or indorse notes which are to be used at a certain bank, will not empower the agent to sign notes in the principal's name to be used in other transactions. Citizens' Savings Bank v. Hart, 32 La. Ann. 22.

The power to indorse and discount notes for one purpose can not be extended to another. Callender v. Golsan, 27 La. Ann. 311.

Mr. Justice Worthington delivered the opinion of the Court.

Appellant sues on a promissory note and the common counts.

The declaration avers appellee on October 3, 1894, made its promissory note for $5,000 payable to the order of Henry Seiter, six months after date at H. Seiter & Company's Bank in Lebanon; and that on December 1, 1894, Seiter, by indorsement, assigned said note to appellant, whereby appellee became liable to pay appellant said note according to its tenor and effect, and promised so to do.

Appellee plead the general issue and three special pleas. The issues made by the pleadings, material under the evidence, to be considered, are want of consideration, and that there was no delivery of the note such as would make appellant its owner or legal holder. The case was tried by the court, jury being waived, and judgment rendered for appellee.

Appellee is a corporation. Henry Seiter was its president and principal stockholder. He was also interested in the bank of H. Seiter & Company at Lebanon; how or to what extent is not disclosed by the evidence. Appellee had overdrawn its account at the Seiter & Company's Bank, and on the third of October, 1894, made the note in controversy, payable to Henry Seiter or order, its president, to be discounted, and its proceeds

applied on its overdraft. It received no credit at the bank for the note. Seiter indorsed it in blank, and gave it to Gleason, a broker at St Louis, to be placed there for discount, and to be returned to him, if not discounted. Seiter testifies, and in this he is corroborated by Gleason, that it was the understanding between him and Gleason, when he gave him the note, that he was to return it if unable to negotiate its discount. This occurred some time in the early part of December, 1894.

On Monday, the tenth of December, 1894, Seiter made an assignment under the State law. James D. Baker had formerly been a partner of Seiter's, and for many years had held "very close business relations with him." On Sunday, December 9, the day preceding the assignment, he had an interview with Seiter at Lebanon. He knew then that Seiter was going to make an assignment. While warden of the Southern Illinois penitentiary, he had deposited over $6,000 in the Seiter and Company Bank, and owing to the bank's straitened financial condition, it could not be drawn out. Judge Kramer testifies "he (Baker) owed money as ex-warden of the penitentiary and ex-treasurer of the criminal insane hospital." At this interview, on December 9, Seiter instructed Baker to get the note in controversy from Gleason, if it had not been discounted, and return it to him. If it had been discounted, he was authorized to get the money and use it according to his judgment. Seiter testifies and it is not contradicted. "After the assignment, of course, I wanted to get the note, and I had heard nothing from it, and supposed Gleason had not placed it, and I asked Mr. Baker to call on Gleason and get the note and return it to me. * * * These were my instructions to Mr. Baker. He had no authority from me to negotiate the note." "He had no authority to use the note at

all. I was sure he (Gleason) would give him the note, or I would not have asked Baker to get it for me. I am sure I did not tell Baker to get this note and use it to clear up his shortage as warden of the penitentiary for the account in my banks."

After the interview with Seiter on Sunday, December 9, Baker wired Judge Kramer, who was the agent of appellant, and a penitentiary commissioner to meet him that evening at St. Louis, which he did. With reference to this interview Kramer testifies: "Baker explained to me all about the note that evening. He told me about the financial condition of Seiter; that State funds had been kept in Seiter's bank and that he was unable to get any for the State, but that he had been able to get this note; that Gleason had it as broker to negotiate, and that if Gleason got the money, he would turn it over to me; he owed money as ex-warden and ex-treasurer of the criminal insane hospital; and that if he did not, he would give me the note." The next day, Monday, Baker and Kramer met Gleason.

During that day Gleason, in company with Kramer, made efforts to discount the note, but failed. In the afternoon Gleason went by himself and tried to place it. He was met in his efforts by the report that Seiter had made an assignment, the news being published in a St. Louis afternoon paper, and failed to negotiate its discount. About 5 o'clock in the afternoon he again met Baker and Kramer, and reported that the assignment of Seiter was known and that the note could not be discounted. He then returned the note to Baker. His testimony as to what took place between him and Baker is in substance as follows: "Baker said, well give it to me to give to Henry (meaning Henry Seiter). I delivered it to Baker for delivery to Seiter.

"Q.   You had no hesitation, from what he stated that he was going to do with it, in delivering it to him?

"A.   Not in the least.   I delivered it as if it had been to Seiter himself."

The time of this conversation is not fixed expressly by the witness, but the fact that the effort to negotiate the note did not cease until the news of the assignment was published that afternoon, and that Gleason reported that fact to both Baker and Kramer, and then delivered the note to Baker, indicates that it took place at the time of the delivery of the note to Baker.

A few minutes after this, not to exceed a half an hour, Baker gave the note to Kramer, as agent for appellant.   Kramer testifies: "The note was turned over to me on account of the funds he (Baker) owed to the State.   It is apparent from the evidence that Kramer, as agent of appellee, knew of this assignment when he received the note.   Circumstances in evidence also strongly indicate that he must have known the conditions under which Gleason delivered the note to Baker.

If he did, he was apprised of the fact that Gleason, as Seiter's agent, delivered it to Baker upon Baker's representation that Seiter had directed him to get it, if not discounted, and return it to Seiter.   In other words, that he was apprised of the fact that Baker was an agent of Seiter to procure the return of the note to Seiter, and for no other purpose.   If this is so, appellant did not become the *bona fide* and legal owner and holder of the note so as to be protected against equities of the maker.   Information to Kramer as agent in the transaction of the business of his agency was information to his principal.

An agent authorized to use a negotiable instrument for a special purpose may apply it to a different use, and under certain conditions pass its legal title.   He

may even fraudulently use it and yet pass its title to a *bona fide* purchaser for value. But good faith in the purchaser is a necessary element. If the purchaser knew, or the circumstances were such as to lead him to believe, that the agent had no authority to transfer the note, he would not be a purchaser in good faith. In such case he would not be protected against an equitable defense by the maker of the note. If he knew, too, that the holder of the note received it as the agent of the payee, from some person other than the payee, it would be his duty to ascertain the scope of the agency of the holder. He would have no right to presume under such circumstances that the agent had authority to apply it in the payment of his own debts.

"If the agency of the party is made to appear, the principal will not be bound beyond the authority of the agent; when the holder has notice that the party acting as agent is such, he is bound to inquire into his authority." Randolph on Commercial Paper, Sec. 388.

"Parties dealing with an assumed agent should be careful to see and be assured that he is the agent that he represents himself to be, and that he is acting within the scope of his powers." Reynolds v. Ferree et al., 86 Ill. 576.

"The principal of a special agent is only bound by acts of the agent which are strictly in accordance with his authority, and a third party is bound at his peril to ascertain the limits of his authority." 1 Am. & Eng. Ency. of Law, p. 351.

"An agent has no right to use negotiable paper belonging to his principal for his individual purposes, and if the party dealing with the agent has notice that he is thus acting in fraud of his principal's rights, he can not hold the principal liable." Daniel's Negotiable Instruments, Sec. 282; Stainback v. Bank of

Va., 11 Grattan, 269; Mechanics' Bank of Mo. v. Schaumburg, 38 Mo. 238; First National Bank v. Gay, 63 Mo. 33.

"If he (the agent) wrongfully delivers the note, the maker is not bound unless it comes into the hands of a *bona fide* holder under the rules entitling him to protection." Daniel on Negotiable Instruments, Sec. 63; Ware v. Smith, 62 Iowa, 159.

"It is clear that the deposit of a promissory note with an agent of the third party, on the condition that it should be used by the agent's principal for a specified purpose, will not confer title so as to authorize the principal to hold the note for a different purpose. Under such circumstances, without the performance of the condition, there is no delivery in a commercial sense and no title passes." Quebeck Bank v. Hillman, 110 W. S. 182.

"If a note be delivered to an agent to be used for a certain purpose, it will be void if diverted from that purpose in the hands of any person having notice of such delivery." Daniel's Neg. Inst., Sec. 855a.

"A note or bill, however complete, takes effect only on delivery." 2 Am. and Eng. Ency. of Law, p. 234.

"It may be conceded as well settled under the law merchant that delivery is absolutely essential to the transfer by indorsement of negotiable instruments." Home, Knox & Co. v. Ould & Carrington, 28 Gratt. (Va.) 1; Fearing v. Clark, 16 Gray, 76; Thomas v. Watkins, 16 Wis. 571.

Counsel for appellant say that all that is necessary to enable any indorser to sue on a note is that he shall have the legal title, citing Burnap v. Cook, 32 Ill. 168. This is true, but the legal title is not had until there is a delivery and delivery is not made when taken from

one who is known to be an agent not authorized to deliver.

Summing the case up then, it amounts to this. Appellee executed its note to Seiter, its president, to be discounted, and its proceeds applied to meeting its overdraft at the bank. In legal effect Seiter was its agent to procure this discount and apply the proceeds. Appellant received no credit or consideration for the note. It afterward paid its overdraft from other sources. It was then entitled to a return of the note unless held by some *bona fide* purchaser for value. Seiter gave the note to Gleason to be discounted, and if not to be returned to him. Gleason fails to have it discounted and Seiter sends Baker to get it if not discounted and return it to him and then makes an assignment. Gleason gives the note to Baker in the presence of Kramer, appellant's agent, to be returned to Seiter under circumstances that indicate that Kramer knew the conditions under which Baker held the note, and certainly knew that Seiter had already made an assignment. Baker, instead of returning the note to Seiter, delivers it to Kramer, as appellant's agent, to apply upon his shortage as warden, caused by the failure of Seiter & Company's Bank. The trial court heard the testimony and found that there was no delivery of the note to a *bona fide* holder for value. We think the evidence supports the finding. If appellant is not a *bona fide* holder for value and appellee received no consideration for the note, it has a valid defense, both legal and equitable.

Judgment affirmed.