# Sinclair Refining Company, Appellant, v. W. J. Newman Company, Appellee.

## Gen. No. 26,990.

1. PRINCIPAL AND AGENT—*when rule that person dealing with agent must examine latter's authority applicable.* The rule that a person dealing with an agent does so at his peril and must examine the authority of the agent before concluding any bargain, applied as against one who purchased large quantities of gasoline for future delivery below the market price and made payment in advance; and such duty was further imposed upon the purchaser in question by reason of the mysterious, secret and confidential manner in which the business was transacted, and which should have been sufficient to put the purchaser on his guard.

2. PRINCIPAL AND AGENT—*when ratification of agent's unauthorized act valid and binding.* The ratification of an unauthorized act of an agent can be valid and binding upon the principal only when the latter has full knowledge at the time of the ratification of all material facts and circumstances relating to the transaction.

3. SALES—*rules for construction of contracts applied.* The rule that in construing a contract the court will examine the contract in the light of the circumstances surrounding the parties at the time it was made and the objects which they then had in view, and that the acts of the parties indicating the construction which they placed upon the contract may be resorted to to determine the true meaning of the contract, applied in an action by an oil company against one who had purchased oil from a third party for future delivery below the market price and made payment in advance to such third party, where defendant never contended that he had made any payment to plaintiff, and stated to plaintiff's collector that the delay in payment was due to efforts to obtain restitution of the money paid to such third party.

4. APPEAL AND ERROR—*failure to present propositions of law to trial court as not precluding consideration of legal questions.* Legal questions, such as the implied authority of an agent and the construction of a written contract, may be considered by a reviewing court, although no propositions of law were presented to the trial court and rulings made thereon.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed with finding of facts.

Sinclair Refining Co. v. W. J. Newman Co., 224 Ill. App. 401.

Opinion filed March 21, 1922. *Certiorari* denied by Supreme Court (making opinion final).

WARREN PEASE, for appellant; ROY T. OSBORN, of counsel.

O'BRIEN & RUTLEDGE, for appellee; WILLIAM B. O'BRIEN and LAMBERT K. HAYES, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the municipal court of Chicago, in an action of assumpsit heard by the court without a jury. Plaintiff, who is appellant here, brought suit to recover $4,371.39, alleged to be due for goods, wares and merchandise sold and delivered by plaintiff to defendant. The defendant filed a claim of set-off. The court found the issues in favor of defendant upon plaintiff's claim and in favor of plaintiff on defendant's set-off. Judgment was rendered against plaintiff for costs.

Plaintiff's original statement of claim, filed December 24, 1920, alleged that its claim is for goods, wares and merchandise furnished and delivered by it to defendant during the period from August 2, 1920, to November 9, 1920, and showed a balance due of $4,371.39. Defendant's affidavit of merits, filed January 8, 1921, denied that it purchased from plaintiff any of the merchandise mentioned. An amended statement of claim was filed by plaintiff January 21, 1921, setting out more in detail the items of gasoline and kerosene for which it sought payment, giving the dates, prices and amounts thereof. The total amount of the goods sold was $9,440.46. Credits were given for a payment on November 10, 1920, of $3,069.07 and on December 3, 1920, of $2,000. Defendant's affidavit of merits, filed February 4, 1921, to plaintiff's amended statement of claim, again denied expressly

that it ever purchased from plaintiff the goods mentioned and denied that it had any dealings with plaintiff regarding goods, wares or merchandise furnished by plaintiff to defendant and denied the existence of any account stated.

Subsequently, pursuant to leave given by the court, defendant filed an amended affidavit of merits. In this document it admitted the purchase from plaintiff of the merchandise in question through one F. Baker and one Henry Sewell, both of whom, it is alleged, were the authorized agents and representatives of said plaintiff and empowered to make the sales and receive payment therefor. The amended affidavit of merits further alleged that on May 12, 1920, it paid to said Sewell the sum of $11,000 in payment for 50,000 gallons of gasoline at 22 cents per gallon and that thereafter it paid to said Sewell $6,000 for 30,000 gallons of gasoline at 20 cents per gallon; that immediately after the first of these payments, plaintiff commenced delivery of the gasoline, which continued from time to time, as alleged in plaintiff's amended statement of claim. Defendant further averred that it purchased 80,000 gallons of gasoline from plaintiff, of which amount 60,827 gallons have been delivered, leaving a balance due to defendant of 19,173 gallons, which should have been delivered to defendant in conformity with the agreements between defendant and Sewell, the alleged agent of plaintiff; also that the market price of gasoline on the date of the first purchase was 25 cents per gallon and on the date of the second purchase was 26 cents per gallon, and that in consideration of the payment to plaintiff in advance of the entire amount of the respective purchases, defendant was allowed a discount of 3 cents per gallon on the first purchase and 6 cents per gallon on the second purchase, and that plaintiff gave to defendant a receipt for $12,500 on account of the first purchase and for $7,800 on account of the second purchase. On

February 15, 1921, defendant was given leave to file a claim of set-off, in which it alleged the matters hereinabove mentioned as to its dealings with plaintiff through its alleged agent Sewell and claimed a recovery for 19,173 gallons of gasoline, remaining undelivered under said orders, at 20 cents per gallon, amounting to $3,834.60. Plaintiff filed its affidavit of merits to the claim of set-off, in which it denied that either Sewell or Baker had any authority to sell to defendant 80,000 gallons of gasoline for future delivery and alleged that Sewell had no connection with plaintiff whatever and no authority to sell gasoline or contract for the sale thereof on behalf of plaintiff; also that Baker had no authority from plaintiff to sell the gasoline mentioned in the claim of set-off under the alleged contracts therein set forth, both of which were alleged to be fraudulent so far as plaintiff is concerned.

By these pleadings the sale and delivery of the gasoline and kerosene mentioned in appellant's amended statement of claim were admitted and there is no dispute as to the prices of these commodities on the days when the two transactions between defendant and Sewell took place and on the days when the merchandise was delivered by plaintiff to defendant. The defense to plaintiff's claim is based upon the alleged agency of Sewell, the authority of Baker in the premises and the alleged contracts between defendant and Sewell.

The evidence shows that in the early part of May one Carroll, the secretary and treasurer of defendant company, having been informed, by a friend of the possibility of purchasing gasoline below the market price, called upon Sewell, in company with his friend, for the purpose of consummating such an arrangement, if possible. Sewell was the agent in Chicago for the sale of Wilcox trucks, as indicated by his stationery and the inscription on his office door. Ne-

Sinclair Refining Co. v. W. J. Newman Co., 224 Ill. App. 401.

gotiations were opened between Carroll and Sewell and the latter satisfied the former of his ability to sell and deliver gasoline below the market price. Sewell offered to furnish gasoline to Carroll at 22 cents per gallon provided 50,000 gallons were ordered for future delivery and paid for in advance, but insisted that the transaction must be kept secret and regarded as confidential between them.  On May 12, 1920, Carroll again went to Sewell's office and delivered to him defendant's check for $11,000, payable to the order of Henry Sewell, thereby consummating the purchase from Sewell of the 50,000 gallons of gasoline.  In that connection Sewell gave to defendant a receipt written on the stationery of the Wilcox Motor Company showing the receipt from defendant of the sum of $12,500 in full payment for 50,000 gallons of gasoline to be delivered as ordered—Red Crown or Sinclair preferred.  While Carroll was present in Sewell's office, one Baker, a city salesman of plaintiff, called there on business wholly disconnected from the transaction between Sewell and Carroll.  Baker was introduced to Carroll at that time but was given no information as to the transaction just described. Baker was ignorant of any agreement between Sewell and Carroll and did not know that defendant had paid to Sewell $11,000 for gasoline to be delivered in the future.  On this occasion Sewell told Baker that defendant would thereafter take gasoline from plaintiff. Baker reported to plaintiff that defendant would become a customer for gasoline, and accordingly an account was opened with defendant upon the books of plaintiff.

Under the custom prevailing in Chicago in transactions of this kind, the gasoline is never sold to customers in quantities for future delivery, but the customer's tanks are filled each day by the tank wagon of the supplying company as long as the customer desires to continue taking gasoline.  Either party may

406    APPELLATE COURTS OF ILLINOIS.

Sinclair Refining Co. v. W. J. Newman Co., 224 Ill. App. 401.

cancel the arrangement at will. The relation lasts only during the wishes of both parties and either may end it. Thereafter gasoline was supplied by plaintiff to defendant in accordance with this custom and invoices were from time to time sent by plaintiff to defendant, all of which were paid either by defendant or by Sewell. The evidence shows that it was Sewell's custom, in making secret and confidential transactions of this kind, which were numerous, to require the consumer to notify him of invoices for gasoline from time to time as delivered by the supplying company and that on such notification being given, Sewell either paid the invoices directly to the supplying company or sent his check to the consumer for the amount of the invoice, in which event the consumer paid directly to the supplying company, Both of these methods were employed during the transactions between the parties to this suit and numerous invoices to defendant were paid by Sewell, the payment being made in a lump sum, which included not only defendant's invoices but the invoices of other parties with whom Sewell had similar secret and confidential transactions.

Apparently all of the gasoline covered by the order of May 12, 1920, was delivered and paid for. At the time of the second transaction with Sewell, in which defendant purchased 30,000 gallons of gasoline for $6,000, Sewell gave to defendant another receipt written on the stationery of the Wilcox Motor Company reciting the receipt from defendant of the sum of $7,800 in full payment for 30,000 gallons of standard grade gasoline—Red Crown, Victory or Sinclair preferred—"which I agree to deliver during the season of 1920 or '21." This receipt, like the former one, was signed by Sewell individually. Deliveries were made under this agreement until November 9, 1920.

In the latter part or May, 1920, Baker for the first time learned the nature of the transaction between

Sinclair Refining Co. v. W. J. Newman Co., 224 Ill. App. 401.

Sewell and defendant. Prior to that time he had no knowledge that Sewell was selling gasoline for future delivery and receiving full payment in advance therefor. Baker questioned Sewell about the transaction and demanded an explanation as to how Sewell could pay the market price for gasoline and sell it to his own customers at a substantial discount from the market price. Sewell satisfied Baker with the explanation that he was enabled to perform this feat by making a profitable use of the money of his customers during the time that it was on deposit with him. Baker did not communicate these facts to plaintiff, evidently having full confidence in Sewell, with whom he was about to enter into a business relationship, which required him to sever his connection with plaintiff at about that time. He subsequently left Chicago and did not return to plaintiff's employment. He had no further connection with the transactions herein involved until he returned to Chicago to testify upon the trial.

Late in the summer of 1920 plaintiff learned the nature of Sewell's transactions with defendant, as well as with numerous other consumers of gasoline in Chicago, and took immediate steps to notify the public by advertisements in the leading Chicago dailies and otherwise, warning the public of the danger of dealing with persons claiming to be authorized to sell gasoline for future delivery, upon payment in advance, at less than the regular market price. In the fall of 1920, Sewell evidently became unable to meet the invoices for gasoline furnished to defendant and other persons with whom he had similar transactions. Defendant's account became in arrears and thereupon plaintiff insisted that defendant should settle up and pay the charges due for gasoline delivered to it from the tank wagons of plaintiff. There was a delay in settling, but finally two payments aggregating $5,069.97 were made, as already stated.

Plaintiff then brought suit for the balance remaining unpaid, as above indicated.

Plaintiff never received any part of the money paid by defendant to Sewell, except as payments were made to it for daily deliveries of gasoline. Baker was plaintiff's city salesman but had no authority to sell gasoline for future delivery and to take payment in advance. Such a proceeding was wholly out of the line of Baker's authority and there is no pretense that Baker ever was a party to any such transaction. Sewell was a clever schemer, who gained the confidence of consumers of gasoline who were willing and anxious to buy at less than the market price. He never pretended to represent any company engaged in the business of supplying gasoline, but in a secret and confidential way induced his business acquaintances to believe that he could and did deliver gasoline to them at a reduced price. He was always prepared to give a new prospect the names of sundry firms with whom he had conducted similar operations in a satisfactory manner.

The contention that Sewell was the agent of plaintiff in these transactions is wholly unsustained by the evidence. The written evidence of the contracts in question shows that they were between defendant and Sewell. Neither Carroll, the authorized representative of defendant, nor the defendant itself, ever received any information or understood that they were dealing with any person other than Sewell. Sewell was not an agent of plaintiff and the record does not disclose any authority in him, real, apparent or implied, by which he was authorized to act for plaintiff. It is true that Baker was a city salesman of plaintiff and if defendant ever had any idea that it was dealing with plaintiff through the agency of Baker, it should have ascertained the nature and extent of Baker's authority enabling him to make contracts of an unusual character wholly different from those ordi-

narily made with reference to the subject-matter. This duty was further imposed upon defendant by reason of the mysterious, secret and confidential manner in which the business was transacted. This should have been sufficient to have placed defendant on its guard. A person dealing with an agent does so at his peril and must examine the authority of the agent before concluding any bargain. He takes the risk as to the extent of the agent's authority and is bound to make proper inquiry. *Blackmer v. Summit Coal & Mining Co.*, 187 Ill. 32; *Reynolds v. Ferree*, 86 Ill. 570; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank*, 199 Ill. 151. Persons dealing with an assumed agent are bound at their peril to ascertain not only the existence of the agency, but the extent of the authority conferred upon the agent. The fact that they are dealing with an agent puts them upon their guard and they must see to it that the act done by him is within his power. Power cannot be conferred upon an agent and the existence of his agency or authority cannot be shown by proof of what he said or did. The principal is the source of authority and the agent's power can be proved only by some word or act of the alleged principal. *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41; *Schneider v. Lebanon Dairy & Creamery Co.*, 73 Ill. App. 612.

It cannot be contended successfully that there was any ratification by plaintiff of the transactions between Sewell and defendant, for the reason that plaintiff had no knowledge of these transactions. The transaction was a confidence game practiced by Sewell upon his business acquaintances. The ratification of an unauthorized act of an agent can be valid and binding upon the principal only when the latter has full knowledge at the time of the ratification of all material facts and circumstances relating to the transaction. 2 Corpus Juris 476. The Supreme Court of

410     Appellate Courts of Illinois.

Sinclair Refining Co. v. W. J. Newman Co., 224 Ill. App. 401.

this State has recognized the rule that ratification by the principal of an unauthorized act of an agent can take place only when the principal has been fully and fairly informed of all the facts and circumstances. *Gilman, C. & S. R. Co. v. Kelly,* 77 Ill. 426; *Kerr v. Sharp,* 83 Ill. 203; *Strawn Farmers' Elevator Co. v. James E. Bennett & Co.,* 168 Ill. App. 428; *Reynolds v. Ferree, supra.* The rule has been recognized and sanctioned by the Supreme Court of this State from an early date. *Cadwell v. Meek,* 17 Ill. 220.

In construing a contract the court will examine the contract in the light of the circumstances surrounding the parties at the time it was made and the objects which they then had in view. The acts of the parties indicating the construction which they had placed upon the contract may be resorted to in order to determine the true meaning of the instrument. *Whalen v. Stephens,* 193 Ill. 121; *Street v. Chicago Wharfing & Storage Co.,* 157 Ill. 605. The fact that neither Carroll, the official representative of defendant, nor any other representative of defendant, ever made any inquiry of plaintiff or any of its agents or representatives as to the transactions with Sewell indicates that defendant never considered that it was dealing with any person other than Sewell. The relationship with Sewell was recognized by the statements made on behalf of defendant to plaintiff's collector, who was endeavoring to obtain payment of the overdue account, to the effect that defendant's delay in payment was due to its efforts to obtain restitution of the money which it had paid to Sewell. Defendant never contended that he had paid the sum in question to plaintiff and did not at the time advance the suggestion that Sewell was a representative of the plaintiff. Under these circumstances the court erred in refusing to sustain plaintiff's claim.

It is also urged on behalf of appellee that legal questions such as the implied authority of an agent

CHICAGO—FIRST DISTRICT—APRIL, 1922.    411

and the construction of a written contract cannot be considered by a reviewing court, unless propositions of law were presented to the trial court and rulings made thereon. This contention cannot be sustained in view of the decision of the Supreme Court in *Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.,* 300 Ill. 162, which expresses a contrary opinion.

The judgment of the municipal court is reversed with a finding of facts and judgment is entered here for $4,371.39 in favor of appellant and against appellee.

*Reversed with finding of facts and judgment here for $4,371.39.*

GRIDLEY, P. J., and BARNES, J., concur.

Finding of facts. The court finds as ultimate facts in this case that Henry Sewell was not the agent of plaintiff and that there was no contract between the parties for the sale by plaintiff to defendant of any specific amount of gasoline to be delivered in the future; that the contracts between defendant and said Sewell were not authorized or ratified by plaintiff and that the value of the merchandise furnished and delivered by plaintiff to defendant, for which defendant has failed to pay, is $4,371.39.