## Standard Oil Company of Indiana, Appellee, v. Union Club Motor Livery, Appellant.

### Gen. No. 28,014.

1. AGENCY—*proof of relationship.* Agency between plaintiff and one who sold gasoline to defendant at a reduced price and to whom defendant paid such price in advance is not shown by evidence that such salesman agreed to deliver gasoline made either by plaintiff or another oil company, that thereafter deliveries were made first by the other company and later by plaintiff, that although such de-

Standard Oil Co. v. Union Club Motor Livery, 228 Ill. App. 50.

liveries were invoiced to defendant at the market price and so received by him the invoices were forwarded to the salesman and thereafter received from him receipted paid by the oil companies, where it appears that the invoices for the deliveries sued on were never returned, that such deliveries were billed at the market price by plaintiff without any reduction and payments made to plaintiff were credited to defendant at the market price, and where there is no evidence that such salesman represented himself to be agent of the plaintiff or that he acted with plaintiff's knowledge or assent or that plaintiff dealt with him on that basis or that he paid plaintiff less than the market price on previous deliveries.

2. AGENCY—*proof of relationship.* In an action by an oil company for the purchase price of gasoline sold to defendant where the defense is raised that such gasoline was bought from a purported agent to whom payment in advance was made, the fact that such purported agent had a book which contained a list of deliveries of gasoline made to defendant which was identical with the invoices sent by plaintiff to defendant is not evidence of agency where it is not shown how or where the purported agent secured such book and plaintiff is not in any way connected therewith.

3. AGENCY—*proof of relationship.* In an action for the purchase price of gasoline delivered to and accepted by defendant by plaintiff, the fact that the gasoline sued for was part of a large quantity delivered during a considerable period of time and that as to the deliveries sued upon a different method of billing on the invoices was used by plaintiff is not evidence that a salesman, with whom defendant had dealt originally and who agreed to furnish gasoline manufactured by plaintiff at a rate under the market price for which defendant paid in advance the amount stated, was then acting as plaintiff's agent where the bills in question contained nothing to indicate that the various deliveries were to be treated differently or that any reduction in price was to be made and credits thereon show that no such reduction was contemplated.

4. PLEADING—*variance between summons and declaration.* The fact that a copy of a summons served on defendant referred to plaintiff as the Standard Oil Company of Illinois and its name appeared in the declaration as of Indiana does not show any variance where the summons required defendant to answer unto the Indiana company.

5. PLEADING—*waiver of variance.* Variance between the summons and the declaration is waived by defendant by pleading generally to the declaration.

6. HARMLESS AND PREJUDICIAL ERROR—*triviality of error.* The fact that a judgment is for two cents less than the verdict and that no remittitur was filed is not ground for reversal.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed February 13, 1923. *Certiorari* denied by Supreme Court (making opinion final).

O'BRIEN, RUTLEDGE & HAYES, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT and HARRY A. DAUGHERTY, for appellee; ALFRED S. AUSTRIAN and ROBERT J. FOLONIE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment against defendant for $5,925.67, entered after a directed verdict for plaintiff by the superior court of Cook county on July 8, 1922, in an action in assumpsit commenced April 6, 1921, wherein plaintiff sought to recover for the value of certain gasoline delivered to defendant during the months of October, November and December, 1920.

The case is similar in its essential facts to *Sinclair Refining Co. v. W. J. Newman Co.*, 224 Ill. App. 401, decided by this Appellate Court in March, 1922, on appeal from the municipal court of Chicago. In that case the municipal court after a trial found the issues in favor of the defendant and entered judgment against the plaintiff for costs, but that judgment was reversed with a finding of facts and judgment entered here for the plaintiff for the value of the gasoline delivered. One of the ultimate facts found by this court was that one Henry Sewell was not the agent of the plaintiff. Subsequently defendant's application for a writ of certiorari was denied by the Supreme Court. In the present case after a trial before a jury, at which much evidence both oral and documentary was introduced by the respective parties, the court on plaintiff's motion instructed the jury to find the issues in its favor and to assess its

damages at $5,925.69, the value of the gasoline shown to have been delivered to defendant. Such a verdict was returned and, after defendant's motions for a new trial and in arrest of judgment had been overruled, the judgment appealed from was entered.

Plaintiff's declaration consists of the common counts, attached to which is a statement of an account, dated February 28, 1921, addressed the defendant and headed "Statement rendered," showing deliveries of gasoline on 39 different days during said months, the number of gallons delivered each day, the market price per gallon, and the total charge of $5,925.69. Defendant filed a plea of the general issue; also an affidavit of merits in which it is alleged that it "entered into a contract with plaintiff for a certain quantity of gasoline to be delivered to it as required"; that at that time it "paid plaintiff for said gasoline *in advance through plaintiff's agent"*; that plaintiff is still indebted to it for failure to deliver 21,947 gallons purchased under the contract; and that defendant is not indebted to plaintiff in any sum, and "did not purchase the items mentioned in the bill of particulars at the various prices therein mentioned." Defendant also gave notice that under its plea it would insist upon the trial that plaintiff, the Sinclair Refining Company and a third oil company combined and confederated together to get defendant's business, and that of other business houses in Chicago, away from the independent oil companies and for that purpose employed Henry Sewell as confidential agent; that Sewell acted as such agent, together with one Whalen, secretary to plaintiff's vice president, and with Robert Stewart and James Stewart, sons of Colonel Stewart, chairman of plaintiff's board of directors, and with one Francis M. Baker, city sales manager of the Sinclair Refining Company, and with others; that "plaintiff company had full knowledge of the contract entered

into between said Sewell and said Stewarts, acting for plaintiff, and the defendant''; that pursuant to said contract plaintiff delivered some of the gasoline so purchased for which defendant paid said Sewell and said Stewarts in full, but that plaintiff has failed to carry out all of its contract and is still indebted to defendant; and that defendant never purchased any gasoline or had any dealings whatever with the Standard Oil Company, of *Illinois*.

The evidence disclosed the following facts in substance: The defendant company was engaged in the garage and motor livery business in Chicago. One J. R. Emery was its president. During portions of the year 1919, and in January, 1920, defendant had been purchasing considerable quantities of gasoline for use in its business through a Mr. Hollingshead, and at prices varying from 1½ cents to 3 cents below the current market price. Early in February, 1920, Henry Sewell called upon Emery, told him that he had a large business in Chicago selling well-known brands of gasoline to many consumers at rates below the current price, and solicited defendant's trade. He gave Emery the names of some of his customers and suggested that Emery communicate with them. Emery did so. On February 14, 1920, Sewell called again and further negotiations were had, resulting in the making of a written contract between Sewell and defendant as per the following instrument, which Sewell on that day personally signed and delivered to defendant:

"Received of Union Club Motor Livery $11,500. Payment in full for 50,000 gallons of gasoline, standard grade, either Red Crown or Sinclair preferred, which *I* agree to deliver on demand.

(Signed)    HENRY SEWELL.''

Instead of paying the amount stated, Emery at the time gave Sewell defendant's check payable to Sewell's order for $8,750. This was at the rate of

17½ cents per gallon, instead of 23 cents, disclosed from said instrument and the then market price. Sewell thereupon telephoned the *Sinclair* Company and directed it to begin delivering gasoline to defendant on the next day. Thereafter Sewell cashed the check, and thereafter the Sinclair Company made frequent deliveries up to May 26, 1920, delivering during the period about 30,000 gallons in all. It appears that under the prevailing custom a customer's tank is filled by the tank wagon of the supplying company at varying short periods as long as the customer desires, but the arrangement exists only during the wishes of both parties and either may end it. As the invoices for this gasoline, so delivered by the Sinclair Company, were received, defendant forwarded the same to Sewell and received them back receipted by that company. After May 26, plaintiff, instead of the Sinclair Company, made deliveries of gasoline to defendant, and the invoices were handled in the same way and returned receipted to defendant. By July 1, 1920, defendant had received the 50,000 gallons which Sewell had agreed to deliver. On July 13, 1920, Sewell executed and delivered to defendant a second contract as follows:

"Received of Union Motor Livery Company the sum of $13,000, being payment in full for 50,000 gallons of standard grade gasoline, Red Crown, Sinclair or Victory preferred, which *I* agree to deliver during the season of 1920 and 1921.

(Signed)     HENRY SEWELL."

Instead of paying the $13,000 mentioned, Emery at the time gave Sewell defendant's check payable to his order for $10,000, which check Sewell subsequently cashed. The amount paid was at the rate of 20 cents per gallon, instead of 26 cents, disclosed from said contract and the then market price. Defendant's bookkeeper testified that, immediately upon the making of this second contract, "we opened

56 APPELLATE COURTS OF ILLINOIS.

Standard Oil Co. v. Union Club Motor Livery, 228 Ill. App. 50.

an account in that book indicating we had paid Henry Sewell $10,000 on account of that contract." This action and the payment of the money to Sewell discloses that at that time defendant believed it was dealing solely with Sewell in the transaction. Thereafter and until December 9, 1920, defendant from time to time received gasoline from plaintiff to the amount of 50,000 gallons. As to those invoices which defendant received for the gasoline delivered up to September 30, 1920, these were forwarded to Sewell and returned to defendant, marked "paid" by plaintiff. As to the invoices which defendant received for the gasoline delivered during the months of October and November, and during December up to December 9, 1920 (the deliveries for which the present action is brought), these were forwarded by defendant to Sewell on December 27, 1920, but defendant never received them back. During the remainder of the month of December, 1920, and during the months of January and February, 1921, defendant continued to receive gasoline, and the invoices for the respective deliveries, from plaintiff. For all of these deliveries after December 9, defendant made payments by its checks and got receipts therefor from plaintiff. During the period of the deliveries in question, the market price of standard grade gasoline was 27 cents per gallon. With each delivery of gasoline made to defendant during said period a copy of a delivery ticket and an invoice, on plaintiff's forms then in use, were delivered to defendant, showing the number of gallons delivered, the price at 27 cents per gallon and the total price. One Andrew Olson was an employee of defendant and during said period it was his duty to receive gasoline and check the quantities put in defendant's tank. His signature appears upon the 39 delivery tickets or receipts, introduced in evidence, wherein he receipted for the amount of gasoline as shown thereon in each instance.

Emery testified: "The bills or receipts which came to me during the period from February, 1920, right on through the whole period from the Standard Oil Company, were at the various market prices as existed at the time the goods were bought. Irrespective of any agreement or understanding with Sewell about reductions, none of these bills were for any price under the market." Plaintiff's invoice for a particular delivery was as a rule filled out by its billing department from the signed delivery ticket or receipt, and the charge made on its books about three days after the actual delivery, and this explains why the charges against defendant, as shown in the "statement rendered," are at later dates than the date of the actual deliveries to defendant as shown from the delivery tickets.

Plaintiff's undisputed evidence disclosed that during the period mentioned it delivered to defendant gasoline of the total value, at the then market price of 27 cents per gallon, of $5,925.69, for which it had not received payment. Unless defendant's evidence sufficiently tended to establish its affirmative defense, viz., that in Sewell's said transactions with it he was acting as plaintiff's agent and with plaintiff's knowledge and consent, we think that the trial court was fully warranted in directing the verdict for plaintiff and in entering the judgment. (*Peter Cooper's Glue Factory v. Devoe & Raynolds Co.,* 178 Ill. App. 298; *Thompson v. Douglass,* 35 W. Va., 337; *Barnes v. Shoemaker,* 112 Ind. 512.) In the *Barnes* case (p. 514) it is said: "If the person ordering the goods receives notice before the goods are appropriated or converted that they have been furnished by another, and is also notified that they are furnished upon such terms as import that the person supplying the goods contemplated a sale upon terms stated, and the person who sent the order afterwards receives and appropriates them, he thereby assents to and

ratifies the filling of the order, and such assent and ratification relate back and give the order the same effect as if it had been originally given to the person who filled it.''

Much evidence, oral and documentary, was introduced by defendant in its endeavor to prove facts sufficiently tending to show that Sewell in his transactions with defendant was acting as the agent of plaintiff, so as to warrant the submission of that issue to the jury. We have carefully examined the facts proven and are of the opinion that, with all their legitimate inferences, they were insufficient to require the court to submit the case to the jury. The following portions of the opinion of this court in the *Sinclair* case (224 Ill. App. 401) above mentioned are applicable to the present case (p. 408):

''Plaintiff never received any part of the money paid by defendant to Sewell, except as payments were made to it for daily deliveries of gasoline.    *    *    * Sewell was a clever schemer, who gained the confidence of consumers of gasoline who were willing and anxious to buy at less than the market price.    He never pretended to represent any company engaged in the business of supplying gasoline, but in a secret and confidential way induced his business acquaintances to believe that he could and did deliver gasoline to them at a reduced price.    *    *    *    The contention that Sewell was the agent of plaintiff in these transactions is wholly unsustained by the evidence.    The written evidence of the contracts in question shows that they were between defendant and Sewell.    Neither Carroll (in the present case, Emery), the authorized representative of defendant, nor the defendant itself, ever received any information or understood that they were dealing with any person other than Sewell.    Sewell was not an agent of plaintiff, and the record does not disclose any authority in him, real, apparent or implied, by which he was authorized to act for plaintiff.    *    *    *    (409)    It cannot be contended successfully that there was any

ratification by plaintiff of the transactions between Sewell and defendant, for the reason that plaintiff had no knowledge of these transactions.   *   *   *
(410)   The fact that neither Carroll (Emery), the official representative of defendant, nor any other representative of defendant, ever made any inquiry of plaintiff or any of its agents or representatives as to the transactions with Sewell indicates that defendant never considered that it was dealing with any person other than Sewell.''

In the present case the testimony of defendant's witnesses, Emery and Miss Vickery, president of and bookkeeper for defendant, respectively, clearly discloses, we think, that Sewell never represented to defendant that he was an agent of plaintiff; that defendant never dealt with him on such a basis; that defendant never made any inquiries of plaintiff, at least until after the gasoline in question was delivered and used by defendant, as to whether Sewell was plaintiff's agent or had authority to make any contract in its behalf for the delivery of any gasoline or to act for it in any way; and that defendant in its dealings with plaintiff never in fact paid it any amount less than that called for in the invoices. Emery was not particularly interested in knowing whether Sewell was plaintiff's agent or not. When under the two contracts mentioned he made the respective payments of $8,750 and $10,000, he relied solely on Sewell's responsibility. Where or how Sewell procured the gasoline was a matter of indifference to him, just so long as defendant received the gasoline contracted for.

In their printed argument here filed, counsel for defendant call particular attention to certain testimony of Miss Vickery, defendant's bookkeeper, as tending to show Sewell's agency. She testified in substance that, at a time when deliveries were being made under the second contract and Sewell was making payments at market prices on the invoices as

60    APPELLATE COURTS OF ILLINOIS.

Standard Oil Co. v. Union Club Motor Livery, 228 Ill. App. 50.

received by defendant and after being checked over by him, she once went to Sewell's office at his request to check over certain invoices; that he opened a book wherein was an account headed with defendant's name; that the invoices which she had brought were then checked over with a certain list, which Sewell exhibited and which was identical with said invoices, as to number of gallons, price per gallon, date, and the total amount due; that said invoices, which she had brought, had been prior to that time in her sole possession; and that she had never before communicated to Sewell the facts therein contained. There was no evidence introduced showing how or from whom Sewell procured the book and list or that plaintiff had brought about such possession. The facts, as testified to, do not alone, or in connection with other facts in evidence, even tend to show that Sewell was plaintiff's agent or had its authority to enter into the said contracts with defendant or that defendant in dealing with Sewell was really dealing with plaintiff. Counsel also comment on the fact that, in a certain statement of account, dated December 31, 1920, and which plaintiff rendered defendant, the items of deliveries thereon, after December 9, 1920, are separated by a line from the prior deliveries in December and the balances due for the October and November deliveries, and that said items of deliveries after December 9 and in that month have a cross-mark (x) in front of each. And counsel contend that, because of this, the gasoline delivered after December 9 was sold on a different basis than that delivered before, and that the statement of account "shows that appellant was only to account for the items marked 'x,' which were all subsequent to December 9." We cannot agree with the contentions. Every item on the statement is a charge against defendant. The items which have cross-marks were paid by defendant's check in January, 1921, and the

statement on its face, showing a credit "Jan. 7. By Cash $2,690.03" and the balance due of "$5,925.69," discloses that it was not received by defendant until after plaintiff had received said check, the amount of which, according to the testimony, defendant had directed should be applied to the deliveries subsequent to December 9th. And there is nothing contained on this statement, taken alone or in connection with the other facts and circumstances in evidence, even tending to show that Sewell was plaintiff's agent, or that plaintiff was bound by his contract of July 13, 1920, in selling to defendant 50,000 gallons of gasoline at a price lower than the market price, or that plaintiff authorized any payment to be made to him on that basis. Counsel also direct our attention to many other facts and circumstances disclosed by the evidence as tending to show that Sewell represented plaintiff as its agent. We deem it unnecessary to discuss them. Suffice it to say that we have considered all the evidence, and all of counsel's points bearing upon the question of Sewell's agency, and are of the opinion, as above expressed, that the trial court was fully justified in directing a verdict for plaintiff and in entering the judgment appealed from. And we do not think that the trial court committed any reversible error in its rulings upon the admission or exclusion of evidence.

Counsel also contend that there was a variance between the summons and the declaration, in that in the copy of the summons, which was served upon it, it was stated that the plaintiff was the Standard Oil Company of *Illinois,* while in the declaration plaintiff's name appears as the Standard Oil Company of *Indiana.* The summons as contained in the transcript shows that defendant was required to answer unto "Standard Oil Company, a corporation organized under the laws of the State of *Indiana.*" Hence, there was no variance. But even if there was, de-

fendant waived the point by pleading generally to the declaration. (*Simons v. Waldron,* 70 Ill. 281; *Fonville v. Monroe,* 74 Ill. 126.)

Counsel also urge as a ground for reversal that although the verdict returned was for $5,925.69, the judgment was for $5,925.67, two cents less, and no remittitur was filed. "The difference is so trivial that it is not worthy of further attention." (*Heartt v. Rhodes,* 66 Ill. 351, 357.) *De minimis non curat lex.*

For the reasons indicated the judgment of the superior court is affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.